MILES, Respondent, vs. MUTUAL RESERVE FUND LIFE ASSOCIATION, Appellant.

*October 30, 1900 — January 8, 1901.*

(1–5) *Life insurance: Benefit association: Nonpayment of assessment: Forfeiture: Burden of proof: Pleading: Authority to make assessment: Receipt after forfeiture: Waiver: Making subsequent assessment.* (6, 7) *Champerty: Purchase by attorney of claim in suit: Pleading.*

| 108 | 421 |
|---|---|
| 108 | 581 |
| 108 | 421 |
| 109 | 274 |
| 108 | 421 |
| 112 | [2]625 |
| 112 | [4]671 |
| 56 LRA | 236 |
| 56 LRA | 237 |
| 108 | 421 |
| 114 | [5]524 |

1. A benefit association claiming that a membership certificate has been forfeited by failure to pay an assessment must show affirmatively that the assessment was imposed in strict accordance with the insurance contract.

2. Under the liberal rules, prevailing in this state, for the construction of pleadings, an allegation in an answer that an assessment was duly made sufficiently states that the conditions existed, and were properly so found, upon which the right to make the assessment depended, and that the assessment was made by proper authority.

3. The constitution of a benefit association provided that on certain fixed dates, or at such other dates as the board of directors might determine, an assessment should be made on the entire membership for such sums as the executive committee might deem sufficient to meet the existing claims by death. *Held:*

    (1) Action by the board of directors was not required except in fixing the time for making an assessment where it was to be made at a date other than one of the dates fixed by the constitution; and where the time had been so fixed the executive committee had power to make the assessment.

    (2) The power of the executive committee was not limited to making such an assessment as was in fact necessary to satisfy the claims, but was a broad discretionary power to make an assessment for such sum as was necessary in their judgment to provide for such claims.

4. Receipt of an overdue assessment on condition that the member was then in good health did not waive a forfeiture caused by the delinquency, where the member was not in good health and there was a prompt offer to return the money upon discovery of the facts.

5. Under a policy providing for a reinstatement after forfeiture upon condition of the payment of all subsequent assessments, the making of a subsequent assessment does not operate as a waiver of the forfeiture.

6. The purchase by an attorney of the claim of his client, pending an action for its enforcement, with the intent to carry on the litigation at his own expense and for his own benefit, is champertous and void.

7. Champerty need not be pleaded or an issue formed in regard thereto in order that it may be established and a dismissal of the action obtained because thereof.

APPEAL from a judgment of the circuit court for Ashland county: JOHN K. PARISH, Circuit Judge.  *Reversed.*

Action to recover on an insurance certificate issued on the life of Louis Toepel in favor of his wife.  The policy provided, among other things, that if any assessment made pursuant to the insurance contract should not be paid within the period stipulated the policy should be void.  The constitution of the association authorized the executive committee to reinstate any delinquent member within one year after his delinquency occurred, for good cause shown and upon satisfactory evidence of good health and payment of subsequent dues and assessments.  The insurance contract further provided that, " On the first week day of the months of February, April, June, August, October, and December of each year (or at such other dates as the board of directors may, from time to time, determine), an assessment shall be made upon the entire membership in force at the date of the last death of the audited death claims prior thereto, for such sums as the executive committee may deem sufficient to meet the existing claims by death, the same to be apportioned among the members according to the age of each member; " and that any member who should fail to pay any asssessment according to the terms of the policy should forfeit his membership and all the rights under his certificate.

On March 16, 1898, the board of directors and the executive committee of the association resolved as follows: "Inasmuch as on this 16th day of March, 1898, there is not a sufficient amount in the death fund to pay death claim No.

10,517, under policy No. 119,612, amount $2,000, issued to James L. Lang of Rouseville, Pa., and other claims (through deceased members) now standing approved by the executive committee, a mortuary call is hereby ordered to be made upon the entire membership subject by contract to assessment and in force upon the books of the association as its rules provide, on the 9th day of March, 1898, being the date of the death of said James L. Lang, whose proofs of death are approved and are now on file in this office, and the mortuary call shall be for one sixth of the maximum rates at the age of assessment, to apply to all policies upon the membership above named the executive committee may deem liable thereunder, and upon all other policies the amount or assessment shall be determined by the executive committee, and this shall be known as mortuary call No. 97." The amount of the assessment apportioned to the certificate in suit was $2.87. Under the terms of the insurance contract, the time limited for the assured to pay his assessment expired on the 1st day of May, 1898. He failed to pay the assessment within such period, whereby such certificate became forfeited, if the assessment was legally made, subject, however, to the right of the executive committee to reinstate the assured as a member of the association for good cause shown and on the further conditions above mentioned.

On May 13, 1898, and after Toepel, by reason of the facts stated, had ceased to be a member of the association, an assessment of $2.87 was made against him and notice thereof duly addressed to him.

On May 23, 1898, the assured, by a member of his family, applied to the association for reinstatement, sending with such application $2.87 and representing that the assured was in good health, had no idea of abandoning his insurance, and that the failure to pay the assessment within the time limited therefor occurred by reason of his being absent from his place of business and his agent in charge not understand-

ing the notice of such assessment. The next day after the money was sent to the association Toepel died, and on the next day it sent to his address a receipt for $2.87 and a notice of reinstatement of his membership on condition, among other things, that he was then, and had been for the previous twelve months, in good health, and that otherwise the retention of the money and the sending of the receipt should not waive the forfeiture of the certificate. Six days after the mailing of the receipt to the assured, the association received from the attorneys for Mrs. Toepel notice of the death of her husband, with a request for blanks to be used in making application for payment of the insurance. The association replied by sending such blanks, expressly reserving its right to insist upon a forfeiture of the policy, and offered to return the $2.87. Payment of the policy was refused because of the facts stated.

Mrs. Toepel commenced this action, *Mr. J. J. Miles* acting as her attorney. Thereafter *Miles* purchased the cause of action for a small amount of money, taking an assignment thereof and becoming, without objection, substituted as plaintiff in place of Mrs. Toepel.

The facts detailed were disclosed by the evidence, and at the close thereof defendant's counsel moved the court for the direction of a verdict, first, because the assignment of the policy to plaintiff was absolutely void, and second, because the evidence failed to establish a cause of action against defendant. The motion was denied and due exception taken to the ruling. A verdict was then, on motion, directed in plaintiff's favor, and a proper exception was taken thereto. Judgment was entered accordingly.

For the appellant there was a brief by *Tomkins & Merrill*, and oral argument by *Geo. F. Merrill*.

For the respondent there was a brief signed by *A. W. Sanborn*, of counsel, and oral argument by *J. J. Miles*.

The following opinion was filed November 16, 1900:

MARSHALL, J.   The record does not disclose upon what ground the trial court decided that plaintiff was entitled to recover.   Counsel for appellant have failed to be of any assistance in that regard, though they are here insisting that the judgment appealed from should be reversed on the merits.   We find in counsel's brief, under the head of "Argument," about one half page of printed matter containing a mere statement that Toepel forfeited his membership by failing to pay call No. 97 for $2.87; that neither the receipt of the money on the false representation that Toepel was in good health, nor the making of the assessment subsequent to the forfeiture of the certificate, waived such forfeiture, with citations of a few authorities on each proposition.

It is not contended here, and we assume was not in the court below, but that Toepel in fact failed to pay call No. 97 within the time limited therefor by the insurance contract, or but that such failure was not waived by the mere giving of the conditional receipt for the money upon the representation made that Toepel was in good health.   The insurance contract expressly provided that the membership created by it would terminate upon the failure of the assured to pay any assessment thereon, made according to its terms, within the time limited therefor by such contract. The evidence is undisputed that there was such a failure, assuming that call No. 97 was properly made, that the facts requisite by the terms of the contract to a reinstatement of the membership did not exist, that the money sent to pay the delinquent call was retained by the association on condition among others that the representations made to it as to Toepel's good health were true, that they were untrue, and that, upon the association being so informed, it promptly offered to return the money; leaving no room to claim that the forfeiture was waived from the mere fact of the giving of the conditional receipt.   All of such propositions are so obviously correct that we must assume counsel have not

suggested in their brief the points which were in the judicial mind in the court below in directing a verdict for plaintiff, and have failed to meet such points in this court.   Probably the circuit judge held that call No. 97 was not made as provided in the insurance contract.   Counsel for respondent urges that point in support of the judgment, and it seems to be the only one the trial court could have deemed of sufficient importance to require much consideration.

It is well settled, as suggested by respondent's counsel, that when a forfeiture of an insurance policy is claimed as a justification for not paying it at maturity, the existence of the precise condition which by the terms of the contract worked its termination must be clearly shown.   If such condition be failure to pay an assessment upon the membership, it must be made to appear that such assessment was made by the persons and under the conditions and for the amount provided in the contract, and that notice thereof was brought home to the assured according to its terms.   Bacon, Ben. Soc. § 377; *Underwood v. Iowa Legion of Honor*, 66 Iowa, 134; *Bates v. Detroit M. B. Asso.* 51 Mich. 587; *Passenger Conductors' L. Ins. Co. v. Birnbaum*, 116 Pa. St. 565; *Covenant M. B. Asso. v. Spies*, 114 Ill. 463; *Baker v. Citizens' M. F. Ins. Co.* 51 Mich. 243.   Hence the burden of proof in this case was upon appellant to show affirmatively, not only that the assured failed to pay an assessment imposed upon his membership, but that it was imposed strictly according to the terms of the insurance contract.   It is claimed that appellant failed in that regard, and that the proper foundation was not laid for proving such facts because they were not pleaded in the answer as a defense.   Proper exceptions were saved to the ruling of the court allowing appellant to introduce proof to establish such facts. `It was stated in the answer that an assessment was duly made and notice thereof was duly given to the assured, and that he failed to pay, etc. It is contended that such allegations were mere conclusions

of law, not statements of facts. There is authority for that contention (*Am. M. A. Soc. v. Helburn*, 85 Ky. 1), but such a strict rule of pleading is not universal. It does not prevail in this state. Sec. 2668, Stats. 1898, provides that in the construction of a pleading for the purpose of determining its effect, its allegations shall be liberally construed with a view to substantial justice between the parties. So it has been held that every reasonable intendment and presumption is to be made in favor of a pleading (*Morse v. Gilman*, 16 Wis. 504), and that if the essential facts can be gathered from the pleading, or may be reasonably inferred from the allegations, it is good, though such allegations be in form uncertain, incomplete, and defective. *Flanders v. McVickar*, 7 Wis. 372; *Merrill v. Merrill*, 53 Wis. 522. Criticisms of a pleading will not support a challenge for insufficiency to state a cause of action or defense, if sufficiency can be discovered reasonably by judicial construction of the language used and by reasonable inferences from general allegations. Such pleadings may be open to a challenge for uncertainty and indefiniteness, but not insufficiency. *Miller v. Bayer*, 94 Wis. 123; *South Bend C. P. Co. v. George C. Cribb Co.* 97 Wis. 230; *Kliefoth v. N. W. I. Co.* 98 Wis. 495; *Zinc Carbonate Co. v. First Nat. Bank*, 103 Wis. 125.

Under the liberal rules stated, the existence of conditions precedent to liability is held to be pleaded from facts reasonably inferable from general allegations such as were used in this case, as, for instance, allegations that a note was duly presented for payment, and duly protested for nonpayment, and that notice thereof was duly given, have been held sufficient to show the existence of facts necessary to the liability of an indorser. *Cutler v. Ainsworth*, 21 Wis. 381; *Frankfort Bank v. Countryman*, 11 Wis. 398; *Gay v. Paine*, 5 How. Pr. 107; *Keteltas v. Myers*, 19 N. Y. 231. An allegation that all the conditions precedent to liability under a contract have been performed sufficiently pleads the exist-

ence of the facts constituting such performance. Sec. 2674, Stats. 1898; *Smith v. C. & N. W. R. Co.* 19 Wis. 326. True, the Code no more allows mere conclusions of law to be pleaded than the common law, but facts may be pleaded according to their legal effect when that does not lead to the statement of such mere conclusions. The allegation that an assessment was duly made, by reasonable inference, states that the conditions existed, and were properly so found, upon which the right to make the assessment depended, and that the assessment was made by proper authority within the meaning of the insurance contract.

It is further claimed by respondent's counsel that the evidence fails to show the assessment was properly made, because there was no proof that the executive committee determined upon any sum as necessary to satisfy existing approved death claims, and it appears that the directors delegated or attempted to delegate their power to make the assessment to the executive committee. That assumes that the insurance contract required the directors to make the assessment and the executive committee to fix upon the precise amount necessary to satisfy existing audited death claims.

We do not so understand the provisions of the constitution of the association. Section 5, as appears by the evidence, provides as follows: " On the first week day of the months of February, April, June, August, October, and December of each year (or at such other dates as the board of directors may, from time to time, determine) an assessment shall be made upon the entire membership in force at the date of the last death of the audited death claims prior thereto, for such sums as the executive committee may deem sufficient to meet the existing claims by death, the same to be apportioned among the members according to the age of each member." That seems plainly to leave the whole subject of making assessments to the executive committee, except in case of an assessment made at a time other than one specifically men-

tioned. In that event it is made the duty of the board of directors to determine upon the time for making the assessment. That is in harmony with what follows the above-quoted language, relating to the subject of forfeiture. We refer to the following: " A failure [by a member] to pay the assessment within thirty days from the first week day of February, April, June, August, October, and December (or within thirty days from the date of such periods as may be named by the directors) shall forfeit his membership in this' association, with all rights thereunder, and the certificate shall be null and void." The requirement for action by the board of directors, it will be easily seen, is confined to fixing the time for making an assessment where it is made at a different time than one particularly pointed out by the constitution. Assessments made at such particular times, or to be paid within the period expressly provided for in the constitution, are left entirely to the executive committee.

The evidence shows that such committee and the board of directors, each acting in its own proper capacity, adopted a resolution March 16, 1898, reciting as facts that there was not sufficient money in the death fund to pay the last audited death claim and other death claims, all approved and payable, and ordering an assessment upon the entire membership of the association in force upon its books, subject by contract to assessment on the date of the death of a member mentioned in the resolutions, as to which it was said a death claim had been filed and approved, for one sixth of the maximum rates at the age for assessment, to apply to policies of all members deemed by the committee liable therefor, and that the amount of the assessment applicable to all other policies should be determined by the executive committee.

The action of the board of directors satisfied the condition requiring them to fix upon the date for making the assessment, since it was made on a day other than the " first

week day of February, April, June, August, October, or De-
cember;" and the action of the executive committee was,
as indicated by the recitals in the resolution, based on a de-
termination that the money in the death fund was insuffi-
cient to pay the outstanding audited death claims, and that
the amount of the assessment made was necessary to pro-
vide for such deficiency. Whether the facts were correctly
determined or not, in the absence of any proof of abuse of
the discretionary power vested in the executive committee
to determine the necessity for making the assessment and
the amount of it, is not material. The power of the com-
mittee was not limited to that of making such an assessment
as was in fact necessary to satisfy audited death claims, but
it was a broad discretionary power to levy an assessment
for such sum as was necessary in their judgment to provide
for the audited death claims. The language of the resolu-
tion, that the assessment should apply to all members in-
sured on the contract assessment plan, deemed by the exec-
utive committee liable to assessment, obviously referred to
the constitutional provision to the effect that assessments
shall go against all memberships in force. That imposed
upon the assessment board the duty of determining what
memberships were in force, or, in the words of the resolu-
tion, what memberships were liable to assessment. That
part of the resolution to the effect that the assessment
should extend to all policies not on the contract assessment
plan, to such an amount as the executive committee should
determine, had no reference to the class to which the Toepel
membership belonged, therefore the validity of it is imma-
terial to this case.

It follows from what has been said that the evidence conclu-
sively shows that call No. 97, whereby the sum of $2.87 was
assessed upon the Toepel membership in the association, was
made in all respects as provided in the insurance contract,
that the assessment was not paid within the time limited there-

for, and that the membership was thereby forfeited. It needs no argument to demonstrate that payment of the assessment after the forfeiture, and acceptance of the payment upon the false representations made that the assured was in good health and a fit subject for reinstatement, when in fact he was at death's door from sickness,— the money being receipted for as a payment upon the certificate on condition of the representations as to the assured's health being true, and there being a prompt offer to return the money upon the association discovering the facts,— did not operate to waive the forfeiture. As before indicated we do not understand that the contrary is contended for. It has often been held that the receipt of an overdue assessment on condition that the member is in good health does not waive a forfeiture caused by the delinquency if the member is not in good health. *Rockwell v. Mut. L. Ins. Co.* 20 Wis. 335; *Lewis v. Phœnix M. L. Ins. Co.* 44 Conn. 72; *Crossman v. Mass. B. Asso.* 143 Mass. 435; *Unsell v. Hartford L. & A. Ins. Co.* 32 Fed. Rep. 443; *Ronald v. Mut. R. F. L. Asso.* 132 N. Y. 378.

It will be observed that the last case cited was against the same insurance association as this case. The facts were somewhat similar to those involved here. The assured was at the point of death when the assessment was paid. It was paid after the certificate was forfeited. The assured died the next day after such payment. The payment was accompanied by representations that the assured was in his usual health save a temporary trifling difficulty caused by his being intoxicated. The fact was he was dying with fatty degeneration of the heart. A receipt was given, substantially the same as in this case, and it was held that the forfeiture of membership in the association was not waived.

A claim is made that the forfeiture was waived because an assessment was made in May after such forfeiture. True, it is said in *Stylow v. Wis. O. F. M. L. Ins. Co.* 69 Wis. 224, that "every time the company makes an assessment against

the insured after he has failed to pay a previous assessment within the time prescribed by the rules, it waives. the forfeiture of the policy for such failure to pay and admits him to be a member of the company notwithstanding such failure." That broad statement should be taken in connection with the facts of the case to which it was applied, and as qualified by *Toelle v. Central Verein G. U. G. G.* 97 Wis. 322, where it was held that under a policy which provides for a reinstatement after forfeiture if application be made therefor within a specified period after such event, upon condition, among other things, of the payment not only of a past but all subsequent assessments, the making of such subsequent assessments does not operate as a waiver of the forfeiture. ·

That covers this case on the point here discussed. It follows that, on the merits of this appeal, the judgment is wrong. The verdict should have been directed for defendant and a judgment have been rendered in its favor of no cause of action.

It is insisted by counsel for appellant that the trial court should have granted their motion for the direction of a verdict, if for no other reason, because the assignment of the alleged cause of action by Mrs. Toepel to her attorney, the respondent herein, pending the action to enforce it, was champertous and absolutely void. While the common-law doctrine as to champerty and maintenance is, in its main features, in force in this state (*Barker v. Barker*, 14 Wis. 131; *Martin v. Veeder*, 20 Wis. 466), it has not been applied heretofore, in any case in this court, to the purchase by an attorney of the claim of his client in a pending suit, to be enforced in such suit at the expense and for the benefit of such attorney. The cases that have been decided here, where champerty was involved, were of the kind more generally met with, and with which the courts are more familiar, i. e. those where an attorney prosecutes a suit under a con-

tract to pay the expenses of the litigation and to have an interest in the recovery. The real mischief which the law of champerty aims to prevent is that of encouraging litigation by persons who have no interest therein independent of that to be derived from carrying it on in whole or in part at their expense. That vice exists where an attorney purchases the claim of his client in suit with the intent to thereafter carry on the litigation at his own expense and for his own benefit, the same as where he agrees to carry on litigation at his own expense, in whole or in part, in the name of another. Such a transaction is, on common-law principles, held to fall under the condemnation of the law of champerty and to be absolutely void. *Arden v. Patterson,* 5 Johns. Ch. 44; *West v. Raymond,* 21 Ind. 305; *Greenman v. Cohee,* 61 Ind. 201; Greenhood, Public Policy, 437; *Simpson v. Lamb,* 40 Eng. L. & Eq. 59; *S. C.* 90 Eng. C. L. 84; Weeks, Attorneys at Law, 552. In *Simpson v. Lamb,* it was said, in effect, that independent of any statute an attorney is, by relation to his client, incapacitated from purchasing of him anything in litigation of which the attorney has the management. " Considering," said the court, " the relation in which the attorney and client stand to each other, it would seem to be against the policy of the law to permit such a dealing by an attorney with the subject of a suit of which he has the conduct as the attorney, while the case is still undetermined by judgment, as that which is now in question before us."

Thus stands the common-law rule as recognized by the courts of England and the courts of this country as well, where the common-law doctrine of champerty has been in the main adopted. Attorneys are officers of the court and charged as such with duties in the administration of justice entirely inconsistent with liberty to traffic in the subjects of the litigation of which they have the management. The law which condemns such transactions necessarily renders

them absolutely void, and when a court is requested to refuse to aid in carrying out such a transaction, by a motion to dismiss the action in which the champertous agreement is involved, the motion should be granted. Moreover, the court may properly act on its own motion in dismissing the action, upon the illegal character of the transaction involved becoming apparent. When a trial court is made fully acquainted with the fact that a suit on trial before it is tainted with champerty, a failure to refuse to proceed therein in effect makes such court a party to the illegal transaction. It has been said that, 'when it appears satisfactorily to the court in proof that the suit is affected by champerty, it is its duty not to permit itself to become the organ or instrument of carrying out the champertous agreement, but it should repel the plaintiff and his suit.' *Webb v. Armstrong*, 5 Humph. 379.

Champerty need not be pleaded and an issue need not be formed in regard thereto in order that it may be established and taken advantage of in the suit. It cannot be waived by any party to the litigation, nor stipulated out of the case. The taint of champerty does not affect the merits of a case at all, but affects the right of the champertor to use the court, regardless of the mere merits of his claim. *Barker v. Barker*, 14 Wis. 131.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with directions to dismiss the action with costs.

·The respondent moved for a rehearing.

For the appellant there was a brief by *Tomkins & Merrill*, and for the respondent a brief by *J. J. Miles*, in person.

The motion was denied January 8, 1901.