# MODERN BROTHERHOOD OF AMERICA LODGE v. BAILEY.

## No. 4687.    Opinion Filed July 13, 1915.

### (150 Pac. 673.)

1. **INSURANCE—Fraternal Benefit Insurance—Reinstatement of Member—Condition—Waiver.** The M. B. A., a fraternal benefit society, with lodge and insurance features, in April, 1910, received Mrs. Bailey as a member, and issued to her a benefit certificate of insurance, and assessed and collected from her, monthly, a per capita tax, reserve fund dues, and benefit assessments, up to assessment No. 11, which was due and payable during the month of November. This payment was not made

until about 15 days after due, when it was made and received and retained by the company; an unconditional receipt being issued therefor. Thereafter, and for the months of December, January, February, March, and April, the company assessed her as other members in good standing and received and retained for each of said months, timely payments of the assessments and local dues, issuing unconditional receipts therefor. Mrs. Bailey died in April, without any delinquency as to payments, except as to the belated payment the previous December. **Held,** that the conduct of the company in retaining the belated payment, without condition, and the continued assessments and retention of payments, without condition, for several months, waived the provision that the reinstatement of a member, in default as to payments, is upon condition that such member is in good health.

2. **CHAMPERTY AND MAINTENANCE — Insurance — Fraternal Benefit Certificate—Condition—Validity.** A provision in a contract of insurance "that in any action at law or equity, brought to enforce the collection of this certificate, or any amount alleged to be due thereunder, claimant or claimants shall not be entitled to receive or recover interest on the amount thereof," is against public policy and will not be enforced, so as to cut off interest from a judgment duly rendered against the company. Such a provision tends to encourage, promote, and prolong litigation over a just claim, which ought not to be litigated; therefore, in principle, it comes under the condemnation of the law relating to champerty and maintenance.

(Syllabus by Brewer, C.)

*Error from County Court, Pawnee County;*
*Fred S. Liscum, Judge.*

Action by John D. Bailey against the Modern Brotherhood of America Lodge. Judgment for plaintiff, and defendant brings error. Affirmed.

*Orton & McNeill* and *Sparrow & Page,* for plaintiff in error.

*G. W. Goodwin* and *J. M. Hayes,* for defendant in error.

Opinion by BREWER, C. This suit was brought in the court below by John D. Bailey, the defendant in error here, on a benefit certificate of insurance, issued by plain-

tiff in error to his wife, Emma Bailey, who, previous to
the time of the suit, had died. The plaintiff in error is
a fraternal benefit society, with lodge features, together
with an insurance feature, under which its lodge members
are given insurance indemnity. In this case, Emma Bailey
was accepted as a member and initiated as such in April,
1910, and thereafter paid monthly, at the time they were
due, a certain per capita tax, reserve fund dues, and
benefit assessments, until November, when assessment
No. 11 was made, and which, under the by-laws, she was
required to pay during that month. On the last day of
the month she went to the place where the secretary of
the local lodge was usually employed for the purpose of
making payment, but, not finding the secretary in at the
time, she did not hunt her up, and did not make the pay-
ment, as she should have done, during the month of No-
vember, and not until some days later, probably between
the 10th and 15th of December, at which time she made
the payment for November. The same was forwarded
to the company at its home office, received and retained
by it, and she was given a receipt in the usual form, dated
November 30th, and without any condition whatever men-
tioned therein. Thereafter, in December, January, Feb-
ruary, March, and April, assessments were made against
her by the home office. She was notified thereof, and
paid the same in the usual way, and received unconditional
receipts therefor from the company. She died in April,
1911, and after proper proofs of death had been fur-
nished the company, and it had denied liability and had
refused to pay, this suit was brought to recover the
amount named in the benefit certificate.

The company sets out numerous sections of the con-
tract of insurance, together with certain by-laws, under

which the society operates, among which is section 139, which provides, in substance:

That if a member fails to pay the per capita tax, reserve fund payments, or benefit assessments "on or before the last day of the month, in which said notice is dated and assessment is payable, or who shall fail to pay, with the benefit assessment next thereafter levied, any fine legally imposed upon him, shall stand suspended and during such supension his benefit certificate shall be absolutely null and void."

Also, section 143, which provides, in substance:

That a member suspended for the nonpayment of assessments, tax reserve fund, lodge dues, or fines, "may be reinstated by the payment within sixty days from the date of suspension of all arrearages of every kind, including all assessments, dues and fines, for which he would have been liable, had he remained in good standing: Provided, however, that such members be in good health at the time of such reinstatement: Provided, further, that the receipt and retention of such assessments, etc., in case the suspended member is not in good health, shall not have the effect of reinstating him," etc.

These averments are followed by the claim that the assured was not in good health when she made the belated November payment. To this answer the plaintiff replied, setting up the facts substantially as hereinbefore stated, and claiming that the conduct of the company in continuing to assess the certificate holder, with full knowledge of her November delinquency, for a number of months, and receiving and retaining the payments she made therefor, upon notice given by the company, constituted a waiver of the forfeiture provision in the by-laws and contract, and operated as an estoppel preventing it from claiming the benefit of same.

The cause was tried to the court without a jury, by agreement of the parties, and the court found for the plaintiff, and gave judgment for the amount sued for, together with interest at the rate of 6 per cent. per annum thereon, from which judgment this appeal is prosecuted. The major question in this case is that of waiver and estoppel. A minor question, relating to the allowance of interest on the policy, will be discussed later.

1. We are of the opinion that the forfeiture in this case was waived by the company by its conduct. It may be admitted, and it is, that the failure to pay the sums due within the time allowed the assured operated *ipso facto* to suspend such member until reinstated, as was held in *Modern Brotherhood of America v. Beshara,* 42 Okla. 684, 142 Pac. 1014, had the matter stopped there. But it is a well-recognized principle that an insurance company may waive any provision in a policy intended for its benefit, as was said in *Pac. Mut. Life Ins. Co. v. McDowell,* 42 Okla. at page 305, 141 Pac. at page 276:

"That an insurance company may waive any provision in a policy intended for its benefit is a principle that requires no citation of authorities in its support. Where there has been a breach in the conditions of a policy, the company may, at its election, take advantage of such breach and cancel the policy, or it may waive the forfeiture by acts, as well as words. It is always required that the company, as well as the insured, should proceed in the utmost good faith. The consideration for the insurance is the premium paid, and if, when paid and appropriated by the company, it may, while retaining the premium, be allowed to plead that the contract of insurance is void *ab initio,* then in such cases the insurer would be bound only at its pleasure."

Said case but asserts the rule announced in *Pacific Mut. Life Ins. Co. v. O'Neil,* 36 Okla. 792, 130 Pac. 270,

in which case numerous authorities are cited. Our attention has not been called to any case in this court, and we recall none, resting upon facts similar to those involved here; but we think the case of *Rice v. New England Mut. Aid Society*, 146 Mass. 248, 15 N. E. 624, a case quite in point, although its facts are not as strongly against the company as are the facts with which we are dealing. In that case, the assured, after default in making payments, paid the same later, and was given a receipt, conditioned "that member is in good health." But thereafter, for a number of months, without making an investigation as to the health of the assured, it continued to assess and collect and retain the ordinary monthly assessments, without condition. We do not feel that we could improve upon the reasoning of the court in that case, and therefore set out quite freely from the opinion as follows:

"If it be assumed that the payment made on the 19th of August was too late, the question remains whether the company, by its subsequent acts, waived a right to avoid the policy or certificate of insurance on that ground. Without expressing any opinion as to the effect of the retention of that money, we think the levy of the subsequent assessments, and the acceptance of the money paid upon them, amounted to such a waiver. When the time came for the levy of a new assessment, if Mr. Rice's policy was to be treated as still in force, he would properly be included in the assessment; otherwise not. Under this state of things, six other assessments upon him were made by the company, all of which were seasonably paid. There was no determination by the directors of the company that for the time being Mr. Rice's policy should be treated as not in force or suspended; but in making the new assessments, so far as appears, no pains were taken, and no intention was formed, to exclude him. No condition was in express terms annexed to the levy of these new assessments, or to the acceptance of the payments by the assured upon them. The company, however, con-

tends that the condition of the former acceptance reaches forward, and applies also to the later payments, and that it is not bound by later assessments which it made, and later payments which it received, in ignorance that the assured was in ill health at the time of the former payment. But it cannot be allowed in this way to imply a condition in favor of a forfeiture. It had knowledge that on the former occasion the payment had been made too late, and that the money had been accepted with a condition annexed. If, before levying a new assessment, the company wished to know the particulars as to Mr. Rice's health, and thus to determine whether that payment was valid or not, it was incumbent on it to make inquiry. Instead of doing so, instead of notifying him that it wished for some positive evidence or statement upon the subject, instead of imposing a further condition relating back to the time of the former payment, the company made an unconditional call upon him for the payment of a new assessment. It acted under no deception or misrepresentation, but it had all the information which it cared to take the pains to acquire. We are unable to see how it can properly be held that the former conditional acceptance cuts down the effect of the later unconditional acceptance. The condition related to the former payment alone. Suppose the payment of the former assessment had never been made at all, and the company, without insisting upon the nonpayment as a ground of forfeiture, had levied new assessments upon the assured, which were all duly paid and accepted without condition; could it be contended that there was no waiver? An unconditional acceptance upon assessment waives all former known grounds of forfeiture; and this effect is not varied or limited because an acceptance of a former assessment had been on condition, and had not amounted to such a waiver. *Hodsdon v. Insurance Co.,* 97 Mass. 144 [93 Am. Dec. 73]; *Bouton v. Insurance Co.,* 25 Conn. 542; *Insurance Co. v. Raddin,* 120 U. S. 183, 7 Sup. Ct. 500 [30 L. Ed. 644]."

The press of our work here prevents us from collecting the very numerous authorities to be found bearing

on this subject, but we have examined sufficient of them to convince us that the holding herein is correct. This view is not shaken when we come to examine the authorities relied upon in the brief of eminent counsel for the company. We will notice, briefly, some of the main cases upon which it seems to rely.

In the case of *Royal Highlanders v. Scovill*, 66 Neb. 213, 92 N. W. 206, 4 L. R. A. (N. S.) 421, a waiver asserted was based on the action of the secretary of the local castle, who received the payments of the assessments while the assured was dying, and only a few hours before she died. The local secretary of the castle was utterly without power to bind the company or waive any of its rights.

In *Carlson v. Supreme Council*, 115 Cal. 466, 47 Pac. 375, 35 L. R. A. 643, the waiver set up was based solely on the fact that, after delinquency, the certificate holder had been notified of benefit assessments, but had not paid them at the time of death. In that order, a delinquent in the payment of his dues and assessments had the right to be reinstated, whether in good health or not, upon paying within 60 days all assessments made against him, up to the time of such payment, and it was held that during such period, it was the duty of the order to continue assessing him and notifying him of the same, to the end that he might avail himself of his right to reinstatement, which was conditioned solely upon the payment.

In *Garbutt v. Citizens' Life & Endowment Ass'n*, 84 Iowa, 293, 51 N. W. 148, and *Miles v. Mutual Reserve Fund Life Ass'n*, 108 Wis. 421, 84 N. W. 159, and *Mutual Reserve Fund Life Association v. Lovenberg*, 24 Tex. Civ. App. 355, 59 S. W. 314, the delinquent assessments were received by the officers of the order, but conditional re-

ceipts were given assured; the condition of the acceptance of the money being "that the assured was in his usual good health at the time of the delayed remittance." Of course, the receipt and retention of the money under these circumstances could not operate to waive the question of "good health," when the receipt under which it was retained pointed out and saved that question. So it is seen that none of these cases, upon which the company appears to place considerable reliance, are in point, when dealing with the facts presented in this record. We therefore conclude that the trial court was correct in holding the company liable.

2. This complaint goes to the allowance of interest on the amount due after suit thereon was brought. The certificate of insurance contained a provision:

"That in any action at law or equity brought to enforce the collection of this certificate, or any amount alleged to be due thereunder, claimant or claimants shall not be entitled to receive or recover interest on the amount thereof."

This contention is carried into the brief, and counsel is satisfied with the claim that, inasmuch as it is in the contract, the judgment, even though correctly rendered, could not draw interest. No authority is cited to sustain the validity of such a clause in an insurance contract. Defendant in error is satisfied with the statement, without authority, that such a clause could not be enforced, because in contravention of public policy. We are inclined to take this latter view on the point. It seems to us that to hold that, no matter how wrongfully the company withheld the money from a beneficiary and no matter how long its wrongful holding should continue, it shall go free of any interest on the amount, lends too

great an incentive to the company to deny the payment of a just claim, and to prolong useless and unnecessary litigation regarding the same, inasmuch as the delay, no matter how long it continued, would cost it nothing, and in the meantime it would have the use of the money belonging to another. So we hold the point is without merit. 9 Cyc. 481.

3. Complaint is also made because the local secretary of the company was allowed to testify that she had notified the home office that the benefit certificate holder was not in good health at the time she was making payment of her assessments, after she had defaulted therein. But, as may be noticed from the expressions we have used, we have laid this testimony aside, and have not predicated this opinion upon it.

The judgment of the trial court should therefore be affirmed.

By the Court: It is so ordered.