## KNIGHTS OF THE MACCABEES OF THE WORLD v. JOHNSON.

No. 8140—Opinion Filed Jan. 2, 1917.

On Rehearing Oct. 28, 1919.

Second Petition for Rehearing Denied July 20, 1920.

(Syllabus by Galbraith, C.)

**1. Insurance—Waiver of Forfeiture Provisions—Payment of Premiums.**

The first, second, and third paragraphs of the syllabus in Pacific Mutual Life Insurance Company v. McDowell, 42 Okla. 300, 141 Pac. 273, L. R. A. 1918E, 391, are approved and adopted herein.

**2. Insurance—Recorder of Beneficiary Association Agency in Collecting Dues and Assessments.**

Under the facts set out in the opinion it is held that the recorder of the local branch of the mutual benefit society, in collecting the monthly dues and assessments from the members, acted as the agent of the general society, and not of the individual members, the provisions of the by-laws to the contrary notwithstanding.

**3. Appeal and Error—Findings—Conclusiveness—Insurance.**

Where the by-laws of a fraternal society provide that no benefit shall be paid on account of the death of a member whose death occurs while such member is to any extent "under the influence of intoxicating liquors," and an action on a certificate is defended on the ground that the member died while under the influence of intoxicating liquor, the question whether the member was under the influence of liquor "to any extent" within the terms of the contract, in a cause tried to the court, was one of fact, to be determined by the court, and its finding, being supported by the evidence, is binding upon appeal to this court.

On Rehearing.

(Syllabus by the Court.)

**4. Insurance—Reinstatement in Fraternal Benefit Society After Suspension—Rights of Beneficiary.**

A policy issued by a fraternal life insurance company provided that a life benefit member, suspended for the nonpayment of a monthly rate, etc., may be reinstated within a certain time by complying with the by-laws of the company. Held, that the right to reinstatement does not die with the insured, but passes to the beneficiary under the policy, and may be exercised at any time during the period of extension.

Error from District Court, Tillman County; T. P. Clay, Assigned Judge.

Action by Willie Z. Johnson against the Knights of the Maccabees of the World. Judgment for plaintiff, and defendant brings error. Affirmed.

Maxey & Brown, for plaintiff in error.

Mounts and Davis and W. C. Stevens, for defendant in error.

Opinion by GALBRAITH, C. This was an action on a benefit certificate issued by the plaintiff in error to Sam W. Johnson, and payable to his wife, Willie Z. Johnson, in the event of his death. The petition alleged the issuance of the certificate in April, 1909, and the death of the member on October 5, 1915, and also a compliance with all the terms and conditions of the policy required on her part to be performed, and that the society had refused to pay, and that it therefore owed the amount of the policy and interest thereon. The company in its answer admitted the issuance of the policy and the death of the member, but denied liability on two grounds: One, that the insured was in default in the payment of dues and assessments at the time of his death; and, second, because of the terms of its by-laws, made a part of the contract of insurance, which provided that, if "the insured was to any extent under the influence of intoxicating liquors" at the time of his death, nothing could be recovered on the certificate, and that he was under the influence of liquor at the time of his death, and therefore the society was not liable. A reply was filed, denying that the insured was in default in the payment of dues and assessments at the time of his death, setting up facts relied on as a waiver of the provisions of the by-laws prescribing the time and place of paying dues and assessments, and denying that the assured was under the influence of intoxicating liquor to any extent at the time of his death. A jury was waived, and the cause was tried to the court. Findings of fact and conclusions of law made, upon which judgment was rendered in favor of the defendant in error for the full amount of the certificate and interest thereon. To review that judgment an appeal has been prosecuted to this court.

The finding of the court on the first ground of defense is set out in finding No. 9, and is as follows:

"That in order to facilitate the collection of the tent and other dues, the monthly rate, and other assessments due the defendant from Sam W. Johnson, the said Sam W. Johnson made an arrangement with the State Guaranty & First National Bank of Frederick, Oklahoma, through Stanley Patten, its cashier, at the request of and by agreement with the said John B. Wilson, record keeper of the local tent of defendant at Frederick, Oklahoma, whereby all dues, special assessments, and monthly rates of said Sam W. Johnson would be paid each month when due, whenever demanded or required by said local record keeper, and that for a number of years prior and up to the time when the last monthly rate of said Sam W. Johnson was paid the said arrangement

between the said bank and the said Sam W. Johnson and the said local record keeper was kept up and followed, and the monthly rate ·of said Sam W. Johnson always paid in time and remitted to the supreme officers within the time required by the by-laws of the order. That the said John B. Wilson considered and treated said agreement as a payment of the dues, assessments, and rates of the said Sam W. Johnson, and that the amounts of such assessments, dues, and rates were at his command and under his control at all times when the same became due by the laws of the order."

This finding is attacked by the society on the ground that it is contrary to the law and evidence, inasmuch as the by-laws of the association, which are by express terms made a part of the contract of insurance, provide that the recorder of the local tent of the society at the town of Frederick should be the agent of the member, and not the agent of the society, and therefore he had no right to waive the prompt payment of the dues and assessments, as provided in the by-laws, and that the finding made by the court in regard to the arrangement made between the recorder and Johnson, the insured, by which the dues were to be paid at the bank, was not called to the knowledge of the society, and it was therefore not bound by it. The Supreme Court of Nebraska, in Modern Woodmen of America v. Asa Colman, 64 Neb. 162, 89 N. W. 641, make an instructive argument against the contention of the plaintiff in error in the instant case, from which we quote the following:

"Notwithstanding the cunningly devised by-laws and stipulations of beneficiary associations like the plaintiff in error, the clerks of local camps are, in the matters of collecting and remitting assessments and the waiver of forfeitures, the agents of the societies and not of the local camp or of their members. As is pointed out by Sanborn, J., speaking for the United States Court of Appeals for this circuit in Modern Woodmen of America v. Tevis, 111 Fed. 113 [49 C. C. A. 256], quoting from the syllabus: 'The actual legal relations of parties to each other, their acts and transactions, prevail over previous written stipulations, which were subsequently disregarded. and condition their rights. Where a beneficiary association empowers the clerk of the local camp to collect, receipt for, remit, and report upon its benefit assessments, and the clerk acts under this authority with the knowledge and consent of all parties, the relation of principal and agent for this purpose exists, and conditions the rights of the parties, notwithstanding the fact that the by-laws and certificates of membership contain a uniformly disregarded stipulation that the clerk of the local camp shall not be the agent of the association, but shall be the agent of the local camp, which has no interest in the benefit assessments; and that the acts or omissions of the clerk shall not affect the liability or waive any of the rights of the association.' It ought to be regarded as the settled law of this state that if a beneficiary insurance association, like the plaintiff in error, continues to collect dues or mortuary assessments from a member who has forfeited his beneficiary certificate, after knowledge of such forfeiture by its officers or agents intrusted with the duty of making such collections, it will be held to have waived such forfeiture, without regard to any restrictions or limitations incorporated in its certificates of membership or by-laws with respect to the power or authority of such persons to make such waivers. It cannot be regarded as material upon what ground or for what reason such forfeiture was incurred. The underlying principle is in all cases the same, namely, that the association, with full notice or knowledge, through its accredited agents, of the facts by reason of which the contract of insurance might have been avoided, has chosen to treat it as valid and in force, and to receive a consideration for so doing. It is no answer to say that such a rule renders the business of the association extremely hazardous, on account of the character of the persons who are necessarily chosen to represent it as officers of the local camps, and of the local influences to which such persons may be subjected. This is one of the hazards voluntarily assumed by those who engage in a business from which they may retire at will, and it furnishes no reason for relieving them from such obligations to the holders of their beneficiary certificates as are imposed upon those in other like enterprises, and as considerations of honesty and fair dealing demand."

The testimony in the record, and upon which the finding is based, shows that an arrangement of long standing existed by which the recorder of the local tent called at the bank and collected the dues and assessments of the members; that the members had arranged with the cashier to pay the dues upon demand of the recorder, and to charge the amount to the accounts of the members; that under the by-laws the recorder was allowed until the 15th day of the month to remit to the society the dues and assessments for the preceding month; that while the by-laws required the member to pay by the end of the month, or forfeit his membership, the recorder of the local tent at Frederick, of which the insured was a member, did not make his collections promptly, but made them from the 1st to the 10th of the month, so as to have his remittance for the General Secretary and Treasurer by the middle of the month; that the recorder did not collect the dues of the insured for September until the 6th day of October, the day following the death of the member; that this payment was made by the cashier of the bank when called for by the recorder, according to the estab-

lished course of conduct, and was included in the remittance to the society made for that month, about the 15th day of October, and the dues of the insured for September were retained by the society until during the trial of the cause in the court below, when an offer was made to return them. It is true that proof of the existence of the course of conduct and the payment of the dues by the cashier of the bank was admitted over the objection of the society and those rulings assigned as error. This testimony was obviously relevant and competent under the issues made by the pleadings.

This testimony supports the finding made by the trial court, and from which we are constrained to hold that the recorder of the local camp was the agent of the society and acted in its behalf, notwithstanding the provisions of the by-laws to the contrary. The question of the power of the society to waive a provision of its by-laws in regard to the time and place of payment of dues is so fully covered by this court in the decision rendered in Pacific Mutual Life Ins. Co. of California v. McDowell, 42 Okla. 300, 141 Pac. 273, L. R. A. 1918E, 391, that we consider it unnecessary to go further into that question, other than to say that the finding and conclusion of the trial court under consideration are fully sustained by that decision. See, also, Pacific Mutual Life Ins. Co. v. O'Neal, 36 Okla. 792, 130 Pac. 270; Shawnee Mutual Fire Ins. Co. v. Cannedy, 36 Okla. 733, 129 Pac. 865, 44 L. R. A. (N. S.) 376.

The finding of the court on the second ground of defense is embraced in finding No. 10 and is as follows:

"The court finds that the evidence fails to show that the said Sam W. Johnson was under the influence of intoxicating liquors at the time he came to his death."

It is complained that this finding is against the evidence, and is therefore contrary to law, and ought to be reversed by this court. The provision of the by-laws is as follows:

"No benefit shall be paid on account of the death of a member whose death occurs while such member is to any extent under the influence of intoxicating liquor."

Did this by-law, which became a part of the insurance contract in suit, require the insured to refrain absolutely from the use of intoxicating liquors and impose upon him the duty of total abstinence from the use of liquid refreshments upon the penalty of forfeiting his insurance? Was the society on account of this provision released from liability, upon a showing that the insured took three or four drinks of liquor between 7 and 12 o'clock at night, and came to his death at 3 o'clock a. m. thereafter, without any evi-

dence that drinking the whisky had any causal connection with his death? The trial court returned a negative answer to these questions. This view finds support in the authorities. Bacon, in Benefit Societies & Life Insurance, volume 2, sec. 328, defines the phrase "under the influence of intoxicating liquor," as used in insurance contracts, to mean "such influence as to disturb the quiet, equable exercise of a man's intellectual faculties." The Supreme Court of Iowa said, in State v. Yates, 132 Iowa, 475, 478, 109 N. W. 1005, 1006:

"Within common knowledge a man becomes intoxicated—that is, drunk—when he passes under the influence of alcoholic liquor; and there are degrees of intoxication varying all the way from slight stimulation to complete coma. It is only at some point along the line between the two extremes that the loss of control of mental faculties occurs."

In Bakalars v. Continental Casualty Co., 141 Wis. 43, 122 N. W. 721, 25 L. R. A. (N. S.) 1241, 18 Ann. Cas. 1123, the Supreme Court of Wisconsin, in approving an instruction of the trial court to the effect that a clause in an accident insurance policy releasing the company, where the accident for which a benefit is claimed occurred while the insured was "under the influence of intoxicating liquors," that this phrase did not mean any and every influence, however slight, but such a degree of influence as would materially impair the insured's ability to care for himself against casualties, and that such degree of influence was equivalent to intoxication in part, said:

"Again, it must be presumed that this provision is included in the policy for some practical purpose, and that therefore it is intended to describe a condition which at least might enhance or affect the insurer's liability. The 'influence of intoxicants' is a very elastic term. We are told by physicians and experimenters that the most trifling quantity of alcohol has some effect and that its effect persists for days, if not permanently, so that one is literally under the influence from a single ordinary portion. We know, as a matter of common knowledge, that one of the first influences may be to stimulate those very faculties of observation and alertness which would improve the capacity of the subject to shield from danger, or escape, and that some degree of influence of an intoxicant would not in any respect increase the peril of injury. It is therefore a natural and almost necessary assumption that these words were not inserted in the policy for the purpose of depriving the assured of the benefit thereof in case of every and any influence of intoxicating liquors, however slight and however nonprejudicial to the insurer. The field, therefore, is open for construction, to ascertain just what degree or kind of influence is referred to. As already said, we must presume that it means such and so much influence as impairs the ability of the subject to care for himself, and thus increases the

probability of his suffering accidental injury. In light of such reasoning it has been decided by all courts speaking upon the subject that influence of intoxicants in accident policies means the same thing as the word 'intoxication.' 3 Joyce, Ins. sec. 2612; Standard Life & Acci. Ins. Co. v. Jones, 94 Ala. 434, 10 So. 530; Campbell v. Fidelity & C. Co., 109 Ky. 661, 60 S. W. 492; Jones v. United States Mut. Acci. Ass'n, 92 Iowa, 654, 61 N. W. 485; Prader v. National Masonic Acci. Ass'n, 95 Iowa, 149, 63 N. W. 601. In this field of indefiniteness it is important that some exact line should be adopted by which the rights of parties are rendered certain, and, in absence of any cogent reasons to the contrary, we deem it wise and justifiable to adopt this line of demarcation which has been approved by express decision of other courts, especially since such decisions preceded the date of this contract, and may reasonably be presumed to have been in mind when its phraseology was adopted. We conclude that the instruction was substantially correct."

It may be said that the certificate in the instant case differs from those under consideration in the above cases, in this respect, that it contains the phrase "to any extent" under the influence, etc., and that there must have been some definite purpose in the minds of the parties to the contract for inserting this phrase. That is all true, but the question as to whether or not the insured was "to any extent under the influence of intoxicating liquors" at the time of his death still remains a question of fact, to be determined by the trier of the facts at issue in the cause.

The evidence in the record discloses that Mrs. Kelly, the proprietress of the hotel at Frederick, had asked the insured to keep away from the hotel because his wife had complained that he went there and visited the rooms of the boarders and drank whisky; that she had not seen him about the hotel for a month or more prior to the night of the accident, and did not know that he was in the hotel on that night; that he must have gained entrance by means of the back stairway that evening. Another witness testified that he was in his room on the third floor of the hotel, about 7 o'clock on the night of the accident, and the insured came up the back stairway with a quart bottle of whisky, and on invitation he went into a room with him, and six or eight other men were there and drank from this bottle. Another witness testified that he was in the room with the insured from 10 to 12 o'clock that night; that he had "taken two or three drinks while I was there." When he left the room at 12 o'clock, the insured was lying on the bed, asleep, having removed his coat, collar, and shirt, and that there was another man lying on the bed asleep with the insured at that time.

The evidence then fails to account for the insured or his conduct, or anything about him, until 3 o'clock in the morning, when he was brought into the hotel in a dying condition, having been picked up from the sidewalk under the window of the room where he was left at 12 o'clock. What caused the death of the insured the evidence does not clearly disclose. The testimony leaves him asleep on the bed near the window in a room on the third floor of the hotel at 12 o'clock, midnight and next discloses him three hours later dying on the sidewalk beneath the window of his room. What he did or what his condition was between 12 o'clock, midnight, and 3 o'clock in the morning, is left to the imagination and conjecture. The testimony shows that the insured was accustomed to drinking liquor, but it does not show that there was more than one quart of whisky in the room that night, and it does not show that he took more than three or four drinks between 7 o'clock and the time he went to sleep on the bed, but it does show that there were six or eight men drinking from this quart bottle. Who can say, under this evidence, to what extent insured was under the influence of liquor at the time he fell to his death?

The trial court, having interpreted the phrase in the certificate, "to any extent under the influence of intoxicating liquor," to mean, not an absolute prohibition against the use of intoxicants, but such a use of them as tends to impair the ability of the insured to take care of himself, the question of whether or not this provision of the contract was violated was one of fact, for the determination of the court. The trial court having found that this provision was not violated, such finding comes to us with the weight of the verdict of a jury on a disputed question of fact. Ellison v. Beannabia, 4 Okla. 347, 46 Pac. 477; Smith v. Spencer, 8 Okla. 459, 58 Pac. 638; Bretch Bros. v. S. Winston & Son, 28 Okla. 625, 115 Pac. 795.

It cannot be said upon this record that there was any positive proof that the insured was under the influence of liquor to any extent at the time of his death. The testimony tends to support an inference that he was under such influence, and if the trial court had so found we could not say that such finding was not supported by the evidence. On the other hand, the court found that the evidence failed to show that the insured was under the influence of liquor to any extent at the time of his death, and we cannot say that this finding is not also supported by the evidence. Inasmuch as we cannot say that the finding of the trial court is not supported by the evidence, under the established practice of this jurisdiction that finding is conclusive upon this appeal.

The judgment appealed from should therefore be affirmed.

## On Rehearing.

KANE, J. After a careful re-examination of the record herein upon petition for rehearing, we are convinced that the opinion prepared by Mr. Commissioner GALBRAITH, formerly approved and handed down by the court, states the law correctly on all the questions passed upon in the opinion. The petition for rehearing filed by the plaintiff in error was based upon two principal grounds:

(1) That the court in rendering the opinion passed only on two questions involved in said appeal, overlooking or ignoring another vital question, to wit: Can there be a reinstatement of a member after his death by some one paying his assessments that are in arrears?

(2) On the question of the right of the local tent officers to waive the requirements of the by-laws, with reference to payment of assessments, the court bases its opinion upon the case of Modern Woodmen of America v. Asa Colman, 64 Neb. 162, 89 N. W. 641, which opinion is based entirely on the case of Modern Woodmen of America v. Tevis, 111 Fed. 113, 49 C. C. A. 256, which was subsequently overruled in an opinion on rehearing, reported in 117 Fed. 369, 54 C. C. A. 293, upon the authority of Northern Assurance Co. v. Grand View Building Association, 183 U. S. 308, 22 Sup. Ct. 133, 46 L. Ed. 213.

The learned Commissioner did overlook the first proposition, but this does not affect the correctness of the conclusion reached by him. The weight of state authority amply sustains the contention of counsel for defendant in error that the legal right to reinstatement, or to have the policy declared to be in full force, did not die with the insured, but passed to the beneficiary under the policy. Dennis v. Mass. Benefit Ass'n, 120 N. Y. 496, 24 N. E. 843, 9 L. R. A. 189, 17 Am. St. Rep. 660; Stuart v. Freeman, 2 British Ruling Cases, 183. In an American annotation to the latter case it is said:

"It is held to be the great weight of authority that payment of premiums or assessments may be made at any time during the period of extension granted, although the insured has died during such period and before the payment."

Many authorities are cited in the note in support of the text. It is true, as counsel says, that the Nebraska case cited by the learned Commissioner quotes largely from the original opinion prepared by Judge Sanborn in Modern Woodmen of America v Tevis, supra, which was subsequently overruled on rehearing, after the Supreme Court had ruled to the contrary. This, however, is of no special significance, for it also appears from several of the authorities hereinafter cited that the Supreme Court of Nebraska still continues to follow the rule supported by the great weight of state authority. This court, in a case controlled by the federal authorities (Sullivan v. Mercantile Town Mutual Insurance Co., 20 Okla. 400, 94 Pac. 676, 129 Am. St. Rep. 761) followed the rule announced by the Supreme Court in the case of Northern Assurance Co. v. Grand View Building Association, supra. But it was stated in the opinion that:

"In applying the rule of law adopted by the Supreme Court of the United States in said case to the case at bar, and in following the same, we do not wish to be understood as laying down a rule by which this court shall be governed in the future in passing upon this same question arising in cases originating since the admission of the state of Oklahoma into the Union."

The significance of this statement becomes clearly apparent when it is considered that, whenever this question has arisen in cases originating since statehood, this court has followed the weight of state authority as announced in the opinion of Mr. Commissioner GALBRAITH. The following cases cited by counsel for defendant in error in their brief, and not heretofore referred to by the court, seem to be in point to the same effect: Crumley v. Sovereign Camp W. O. W., 102 S. C. 386, 86 S. E. 954; Knights of the Maccabees of the World v. Pelton, 21 Colo. App. 185, 121 Pac. 949; Collver v. M. W. A., 154 Iowa, 615, 135 N. W. 67; Johnson v. Grand Lodge A. O. U. W. 31 Utah, 45, 86 Pac. 494; Shultice v. M. W. A., 67 Wash. 65, 120 Pac. 531; Henton v. Sovereign Camp Woodmen of the World, 87 Neb. 552, 120 N. W. 869, 138 Am. St. Rep. 500; Jones v. Supreme Lodge Knights of Honor, 236 Ill. 113, 86 N. W. 191, 127 Am. St. Rep. 277; Thomas v. Modern Brotherhood of America, 25 S. D. 632, 127 N. W. 572; Leland v. Modern Samaritans, 111 Minn. 207, 126 N. W. 728; Patton v. Women of Woodcraft, 65 Or. 33, 131 Pac. 521; Independent Order of Foresters v. Cunningham, 127 Tenn. 521, 156 S. W. 192; Gilmore v. Modern Protective Ass'n, 171 Ill. App. 525; Kelly v. Ancient Order of Hibernians Insurance Fund, 113 Minn. 365, 129 N. W. 846; Supreme Lodge United Benev. Ass'n v. Lawson, 63 Tex. Civ. App. 273, 133 S. W. 907; Grand Temple, etc., v. Johnson (Tex. Civ. App.) 171 S. W. 491; Hendrickson v. Grand Lodge. A. O. U. W., 120 Minn. 36, 138 N. W. 946; Mosaic Templars of America v. Jones, 99 Ark. 204, 137 S. W. 812.

For the reasons stated, the order granting a rehearing herein is set aside and the opin-

ion rendered by Mr. Commissioner GAL-BRAITH, as herein supplemented, is approved.

All the Justices concur, except JOHNSON. J., disqualified.