### SOVEREIGN CAMP W. O. W. v. TAM.

No. 13375—Opinion Filed May 22, 1923.

(Syllabus.)

**1. Insurance — Fraternal Insurance — Suspension and Forfeiture for Nonpayment of Dues—Waiver.**

The provisions for suspension from membership and forfeiture for nonpayment of dues or assessments contained in the by-laws of a fraternal insurance society, are regarded as being inserted in contracts of this nature for the benefit of the insurer, and when default in the time and manner of payment occurs, the insurer may effectually waive the forfeiture by any course of dealing inconsistent with the claim of suspension, notwithstanding the provisions of the by-laws to the contrary.

**2. Same—Proof of Waiver — Acceptance of Later Dues.**

The fact that such an association, after it has the right to forfeit a member's certificate for nonpayment of dues, levies and collects from him another assessment, and appropriates the money to its own use, is evidence tending to show a waiver of the forfeiture.

**3. Same—Sufficiency of Evidence.**

We have examined the record carefully, and are convinced that the evidence brings

the case well within the purview of the rule laid down in the line of cases followed, and that it sufficiently sustains the findings and judgment of the trial court.

Error from District Court, Tulsa County; Redmond S. Cole, Judge.

Action by Louisa S. Tam against Sovereign Camp Woodmen of the World to collect life insurance. Judgment for plaintiff, and defendant brings error. Affirmed.

N. B. Maxey, for plaintiff in error.

McGuire & Marshall, for defendant in error.

KANE, J. This was an action to recover upon a fraternal insurance policy, commenced by the defendant in error, plaintiff below, against the plaintiff in error, defendant below.

Upon trial to the court there was judgment in favor of the plaintiff as prayed for, to reverse which this proceeding in error was commenced.

The insurance policy was taken out by George T. Tam, deceased, as a member of Camp No. 496 of Sovereign Camp Woodmen of the World.

The constitution and by-laws of the order provide that death losses shall be met monthly by assessments levied against the members, payable at certain specified times, and there is also a provision to the effect that if a member fails to make any such payments on or before the last day of the month, he shall stand suspended, and during such suspension his beneficiary certificate shall be void. And there is another provision to the effect that should a suspended member pay all arrearages and dues to the clerk of his camp within ten days from the date of his suspension, and if in good health and not addicted to the excessive use of intoxicants or narcotics, he shall be restored to membership and his beneficiary certificate again become valid; and there is another provision to the effect that any attempted reinstatement shall not be effective for that purpose unless the member be in fact in good health at the time of his reinstatement.

It is conceded that these provisions of the by-laws were not strictly complied with by the insured during his lifetime, and that the policy would be void unless the doctrine of waiver is applicable to the situation presented by the record.

The court below decided the case in favor of the plaintiff upon the theory that strict compliance with the terms of the by-laws was waived by the defendant by its course of conduct. So the principal question presented for review is whether or not the suspension or forfeiture feature of the contract found in the constitution and by-laws of the order may be waived by the agents of the order, and whether or not the defendant can, by the course of dealing evidenced by the record, estop itself from claiming that a suspension or forfeiture has occurred.

The facts necessary for the consideration of this question may be briefly summarized as follows:

George T. Tam, the insured, was severely burned at the refinery of the Texas Company, near Tulsa, on May 13, 1920, and died from his injuries on the 24th of the same month. On the morning of May 13th, he requested his brother Calvin to pay his dues and assessments in defendant order. Calvin did not pay the dues and assessments that day, because the office of the camp clerk at Tulsa was closed, but on the following evening, not knowing of the injury of his brother, he paid the dues for April, which should have been paid on or before the last day of that month, and also the dues for the month of May, which could have been paid on or before the last day of the month.

These two assessments were received by the camp clerk, and he issued his receipt therefor in the usual form. After this transaction occurred, and within two or three days after George T. Tam died, another brother, James J. Tam, went to the office of Mr. Harper, the camp clerk, and told him that George had died. Mr. Harper advised him that it would be necessary to turn in George's policy and to prepare proofs of death, forms for which Mr. Harper said he would secure from the head camp.

About a week later, James Tam received these forms of proofs of death and they were taken to an attorney at Mr. Harper's suggestion and filled out. The proofs of death were then returned to Mr. Harper, who transmitted them to the proper officer of the Sovereign Camp.

John T. Yates, the sovereign clerk, received the April, 1920, installment, which had been paid to Mr. Harper on May 14th, upon the 27th day of May, 1920, and the May installment was received on the 2nd day of June, 1920.

The defendant received notice of the death of George Tam at its principal office on May 27, 1920, which was the same day that the April, 1920, assessment was re-

ceived by the defendant. This notice recited that Sovereign George T. Tam, "a member in good standing of Camp No. 496," died at Tulsa, on May 24, 1920, and also stated that the last two installments of his assessment had been paid as follows: "Installment No. 4, for the year 1920, paid on the 14th day of May, 1920, and installment No. 5 for the year 1920, paid on the 14th day of May, 1920."

Upon June 4, 1920, and after both the April and May installments and the notice of the death had been received by the Sovereign Camp, official forms for proofs of death were sent to the camp clerk. . These proofs of death were returned to the Sovereign Camp and received by it on June 28, 1920. No attempt was made to deny liability under the contract until July 27, 1920, when a check for the dues paid on May 14, 1920, was sent to Mrs. Tam, the beneficiary, which was not accepted.

Counsel for the defendant contends that in these circumstances the case is governed by Modern Woodmen of America v. Tevis, 117 Fed. 369, and the cases following it, holding that the terms of the contract with the insured, evidenced by the constitution and by-laws of the order, so limit the power of its agents that they cannot either extend the time of payment of a benefit assessment or waive default in its payment, or reinstate a suspended member without a warranty of good health.

On the other hand, counsel for the plaintiff contend that the case is governed by the great weight of state authority, including this court, holding that the provisions for suspension from membership and forfeiture because of nonpayment of dues or assessments contained in the by-laws of a fraternal insurance society are regarded as being inserted in contracts of this nature for the benefit of the insurer, and when default in the time and manner of payment occurs, the insurer may effectually waive the forfeiture by any course of dealing inconsistent with the claim of suspension, notwithstanding the provisions of the by-laws to the contrary.

While there is a conflict in the authorities on the question under consideration, it seems to us that the latter contention is well taken, and that this court has definitely taken its place with the great weight of state authority.

In the case of Knights of the Maccabees of the World v. Johnson, 79 Okla. 77, 185 Pac. 82, this court followed the rule in regard to waiver laid down by the Supreme Court of Nebraska in Modern Woodmen of America v. Asa Colman, 64 Neb. 162, 89 N.W. 641, which followed the rule announced in the original opinion by Judge Sanborn in the case of Modern Woodmen of America v. Tevis, as reported in 111 Fed. 113, 49 C. C. A. 256. Upon rehearing it was contended that, inasmuch as the Supreme Court of Nebraska followed the rule announced in the original opinion in the Tevis Case, supra, and this case was subsequently overruled upon rehearing in an opinion by the same judge who prepared the former opinion, this court ought to recede from its former ruling. The court deemed the circumstance of the overruling of the first opinion in the Tevis Case to be of no special significance because it also appeared that the Supreme Court of Nebraska in several later cases still continued to follow the great weight of state authority. The original opinion in the Tevis Case was overruled because of the controlling federal case of Northern Assurance Co. v. Grand View Building Association, 183 U. S. 308, 22 Sup. Ct. 133, 46 L. Ed. 213, which was handed down while the Tevis Case was pending on petition for rehearing.

In an early case where this court was controlled by the federal authorities (Sullivan v. Mercantile Town Mutual Ins. Co., 20 Okla. 460, 94 Pac. 676, 129 Am. St. Rep. 761) the rule announced in the Northern Assurance Co. Case was followed, the court saying:

"In applying the rule of law adopted by the Supreme Court of the United States in said case to the case at bar, and in following the same, we do not wish to be understood as laying down a rule by which this court shall be governed in the future in passing upon this same question arising in cases originating since the admission of the state of Oklahoma into the Union."

Referring to this statement in the case of Knights of the Maccabees v. Johnson, supra, the court says:

"The significance of this statement becomes clearly apparent when it is considered that whenever this question has arisen in cases originating since statehood, this court has followed the weight of authority as announced in the opinion of Mr. Commissioner Galbraith."

Some of the cases referred to as following the great weight of state authority are: Pacific Mutual Life Insurance Co. v. McDowell, 42 Okla. 300, 141 Pac. 273, L. R. A. 1918 E, 391; Modern Brotherhood of America v. Bailey, 50 Okla. 54, 150 Pac. 673, L. R. A. 1916 A, 551. The earlier case of Modern Brotherhood of America v. Beshara, 42 Okla. 684, 142 Pac. 1014, seems to announce

a different rule, but upon second appeal of this case this court held that, although the doctrine as to waiver announced therein was in effect repudiated in Modern Brotherhood of America v. Bailey, 50 Okla. 54, 150 Pac. 675, L. R. A. 1916 A, 551, the former decision became the law of the case, and controlling upon the subsequent trial.

No useful purpose would be subserved by a new discussion of the relative merits of these two conflicting lines of cases. A great many of them in line with the conclusion reached are collected and cited in the Knights of the Maccabees v. Johnson, supra.

Neither would it be useful to dwell with more particularity upon the facts developed at the trial of the case at bar. On this point we deem it sufficient to say that we have examined the record carefully, and are convinced that the evidence brings the case well within the purview of the rule laid down in the line of cases followed, and that it sufficiently sustains the findings and judgment of the trial court.

For the reasons stated, the judgment of the trial court is affirmed.

JOHNSON, C. J., and KENNAMER, HARRISON, and MASON, JJ., concur.