## MODERN BROTHERHOOD OF AMERICA v. BESHARA.

No. 7571—Opinion Filed June 20, 1916.

(158 Pac. 613.)

### 1. Appeal and Error—Review—Successive Appeals—Law of the Case.

A question decided by the Supreme Court on a former appeal becomes the law of the case in all its stages, and will not ordinarily be reversed upon a second appeal of the same case, when the facts are substantially the same.

### 2. Insurance—Action for Death Benefit—Instructions—"Good Health."

Instructions examined, and held to fully state the law applicable.

### 3. Same—Question for Jury.

The trial court properly refused to direct a verdict for defendant.

(Syllabus by Bleakmore, C.)

Error from Superior Court, Muskogee County: H. C. Thurmond, Judge.

Action by Schickery Beshara against the Modern Brotherhood of America. Judgment for plaintiff, and defendant brings error. Affirmed.

See, also, 42 Okla. 684, 142 Pac. 1014.

N. B. Maxey, for plaintiff in error.

S. V. O'Hare and A. A. Davidson, for defendant in error.

Opinion by BLEAKMORE, C. This action was commenced in the superior court of Muskogee county, on April 20, 1911, by Schickery Beshara against the Modern Brotherhood of America, a fraternal benefit association, to recover on a certificate issued by it to his

wife, Rilla May Beshara, who became a member of such association on April 5, 1910, and died on December 17th thereafter. After her reception as a member, Rilla May Beshara paid the per capita tax, reserve fund, assessments, and local lodge dues, at the time prescribed by the by-laws of the association, save the amount thereof payable during the month of August, 1910, which was paid on the 8th day of the following month, by check, to the secretary of the local lodge, who immediately notified the supreme secretary of the association of such payment, and remitted the amount thereof; and this and the subsequent monthly assessments and dues payable during the lifetime of the assured were received and retained by the association. Defendant denies liability, and alleges in its answer:

"Defendant, further answering, says that the plaintiff ought not to recover on this certificate for that, said Rilla May Beshara was suspended from the society on the 1st day of September, 1910, for the nonpayment of the August assessment, but attempted to reinstate on September 8, 1910, but said attempted reinstatement was void, for the reason that at the time of said reinstatement, the said Rilla May Beshara was not in good health, but was suffering from consumption and other diseases, and, under the constitution and by-laws of defendant, which are a part of the contract between the member and the society, she could not have been reinstated unless she was in good health."

Certain sections of the by-laws of the association pertinent to the case were introduced in evidence as follows:

"Section 135. No waiver of Any By-Laws. No officer of this society, either of the Supreme or any subordinate lodge, shall have any power or authority, nor shall such officer be permitted, to waive any of the provisions of the by-laws of this society which relate to the contract between the member and the society, whether the same be now in force or hereafter enacted." Pt. Sec. G, Div. 10, 1907 Amend.

"Section 139. Benefit Assessment, per Capita Tax, Reserve Fund and Other Dues Payable, When—Or Member Suspended. Each and every benefit member so notified through the official paper that an assessment has been ordered or levied by the board of directors in manner and form hereinbefore provided, failing to pay the same, together with his per capita tax and reserve fund payments mentioned in section 124 hereof, including local lodge dues, if any are due, on or before the last day of the month in which said notice is dated, and assessment is payable, or who shall fail to pay, with the benefit assessment next thereafter, levied, any fine legally imposed upon him, shall stand suspended, and during such suspension his benefit certificate shall be absolutely null and void." Pt. Sec. C, Div. 11, 1907 Amend.

"Section 142. Suspended Member Not Entitled to Benefits. A suspended member, unless under suspension for discipline, is not entitled to any of the benefits of the society, either fraternal or financial, nor can such suspended member perform the duties of any subordinate lodge officer, or be a delegate to a district convention or to a convention of the Supreme Lodge." Pt. Sec. E, Div. 11, 1907 Amend.

"Section 143. Suspended Member May Reinstate Within Sixty Days. How. Any member suspended for the nonpayment of benefit assessments, per capita tax, reserve fund payments, local lodge dues, fines, or any other assessments or dues, if not engaged in any of the prohibited occupations mentioned in sections 103 and 104 hereof, may be reinstated by the payment, within sixty days from the date of suspension, of all arrearages of every kind, including all assessments, dues and fines for which he would have been liable had he remained in good standing: Provided, however, that such member be in good health at the time of such reinstatement: provided, further, that the receipt and retention of such assessments or dues, in case the suspended member is not in good health, shall not have the effect of reinstating said member or entitling him, or his beneficiaries to any rights under his benefit certificate." Sec. D, Div. 11, 1907 Amend.

The evidence discloses that assured, Rilla May Beshara, was a patient in the sanitarium at Arkansas City, Kan., for about three weeks in August, 1910, where she was treated for catarrh of the throat, bronchial affection, and female trouble; that in June she had undergone a successful operation for lacerated cervix, and perineum, at which time the physician and surgeon who performed the operation testified that he examined her heart, lungs, etc., and found them in a healthy condition. On September 25, 1910, she was visited by a physician, who testified that she was suffering from quick consumption or acute phthisis in the "beginning stage" and, further:

"Q. How long ordinarily does it take for the bacteria of acute phthisis to develop? A. From four to six weeks. Q. Would there be any apparent symptoms of the disease after exposure and before the expiration of a week or two? A. No; not in two weeks. Q. Would it in three weeks? A. Three or four weeks. Q. Is the course of the disease rapid or otherwise. A. Very rapid. Q. About how long does it usually run? A. One, two, or three months."

A physician, offered as an expert on tuberculosis, testified that the insured might have been in the condition described on September 25th, and not have been affected with such disease on September 8th, and, further:

"Q. What is the general rule as to how long it takes tuberculosis, acute phthisis, as you call it, to develop; about what is the

usual time it takes to develop so that you can discover it? A. Acute tuberculosis is mistaken a great many times for typhoid fever. a person takes down with acute tuberculosis, and dies immediately, and the same is true of cases of phthisis; the germs get into the circulation, and in acute tuberculosis meets with the circulation, and the circulation is affected. It runs a very rapid course: I would say from ten days to four weeks."

The testimony of other witnesses. neighbors of the insured. was produced. to the effect that prior to April. 1910, she was apparently in good health. There was a trial to the jury resulting in a judgment for plaintiff, to review which this proceeding in error is prosecuted.

This is the second time the case has been before this court (Modern Brotherhood of America v. Beshara, 42 Okla. 684, 142 Pac. 1014), and the pleadings and evidence presented by the record are the same as upon the first appeal. On the former trial the defendant below contended, as it does here. that the insured was not in good health after September 1. 1910, and. having been ipso facto suspended as a member of the association on that date for failure to pay the assessments and dues required to be paid during the month of August. was not, and could not have been. reinstated by reason of the payment thereof on September 8th. The court on that trial took the view that by receipt and retention of such payment defendant had waived the provisions of the bylaws, and therefore directed a verdict for the plaintiff. Such action of the trial court was. upon the first appeal, held erroneous, and it was further held:

"The issue of fact as to whether the member was in good health at the time she was reinstated. being a controverted issue, and there being conflicting testimony in reference thereto, should have been submitted to the jury for consideration."

Although the doctrine as to waiver announced therein was in effect repudiated in Modern Brotherhood of America v. Bailey, 50 Okla. 54. 150 Pac. 673. L. R. A. 1916A. 551, such decision became the law of the case, and controlling upon the subsequent trial. Gidney v. Chapple, 43 Okla. 268, 142 Pac. 755. Conformably thereto the court below, upon the second trial, charged the jury:

"You are therefore instructed that under the pleadings there are two questions for you to determine: First. whether Rilla May Beshara was in good health at the time she was admitted to membership in the defendant society; second. whether she was in good health at the time of her attempted reinstatement on September 8, 1910. as required by the by-laws of the defendant society."

The defendant assigns as error the giving of the following instructions:

"The plaintiff in his reply to defendant's answer denies the allegation therein that Rilla May Beshara was not in good health at the times mentioned, and alleges, further. that the conditions of her health were well known to the defendant at the time of her admission to membership and reinstatement."

"You are instructed that the burden of proof is on the defendant to prove that Rilla May Beshara was not in good health, as the term 'good health' is defined and explained in these instructions, at the time of her admission to membership in the society, or at the time of her reinstatement therein; and, unless you find from the evidence that the defendant has proven by a preponderance of the evidence that Rilla May Beshara was not in 'good health.' as the term 'good health' is defined and explained to you, at the times mentioned. then you should find for the plaintiff for the full amount sued for. to wit, $2,000."

"You are instructed that, even if you do believe from the evidence that Rilla May Beshara. at the time of her admission to defendant society, or at the time of her reinstatement, had ailments which were not of such character as to produce bodily infirmity, or serious impairment or derangement of the vital organs, still she was in 'good health,' as that term is understood in connection with life insurance"—which was excepted to at the time.

"You are instructed that good health does not mean perfect health. It is not disproved by showing that the insured has ailments which are not serious in their natural consequences, but good health means simply that the applicant for life insurance is exempt from any dangerous disease, or one which ordinarily ends fatally"—which was excepted to at the time.

Under the circumstances of this case we are of the opinion that the substantial rights of the defendant were in no way prejudiced by the giving of such instructions.

The failure of the trial court to direct a verdict for the defendant is also assigned as error. The request of defendant in this respect was properly refused. for the reason that the only substantial issue of fact in the case left for the determination. under "the law of the case." was the question "whether the member was in good health at the time she was reinstated. * * * and. there being conflicting testimony in reference thereto." this was properly submitted to the jury.

The judgment should be affirmed.