DELIA MULHERIN v. BANKERS' LIFE ASSOCIATION, Appellant.

Mutual insurance: NON-PAYMENT OF ASSESSMENT: EVIDENCE. In this
1  action upon assessment life insurance certificates which defendant claimed were not in force because of the default of the assured in the payment of an assessment, the evidence of non-payment is held sufficient to carry that question to the jury.

Same: NOTICE OF ASSESSMENT: SUFFICIENCY. Where the directors of
2  a mutual insurance company were authorized by the by-laws of the society to provide funds in advance for death losses which might occur during the ensuing three months, a notice stating that the assessment was made to provide a fund to meet death losses, was sufficient to meet the requirement of the statute and of a by-law providing that such notice shall state the object for which the fund to be collected was to be used, although it was intended in part to pay anticipated losses.

Same: NON-PAYMENT OF DUES: FORFEITURE: WAIVER: PERSONAL
3  LIABILITY. Waiver of forfeiture of a benefit certificate for non-payment of an assessment left payment of the assessment optional with the insured, and did not create a personal liability because in violation of a by-law providing that no personal liability would be incurred beyond the payment of guaranty notes by becoming a member.

Same: APPLICATION OF GUARANTY DEPOSIT.  Upon default in payment
of an assessment a member of a benefit insurance society cannot
require the application of a guaranty deposit to the payment there-
of before a forfeiture could be declared.

*Appeal from Linn District Court.*—Hon. Milo P. Smith,
Judge..

WEDNESDAY, JANUARY 14, 1914.

ACTION on three certificates of life insurance resulted in
judgment as prayed.  The defendant appeals.—*Reversed.*

*I. M. Earle* and *Grimm, Trewin & Randall,* for appellant.

*J. H. Preston, Ed Preston,* and *Tourtellot & Donnelly,*
for appellee.

LADD, C. J.—I. The defendant is a mutual assessment as-
sociation and on November 26, 1909, issued three certificates of
membership to Thomas Mulherin, stipulating in each "that,
in the event of his death during membership,
his beneficiary shall receive the sum of two
thousand dollars and the guaranty fund de-
posited with the association by said member amounting to
thirty-nine dollars."  Mulherin died January 17, 1911, and,
the defendant having denied liability on the ground that cer-
tificates had lapsed because of his failure to pay assessments,
this action was begun.  The defense interposed was: That at
a regular meeting the directors of defendant on June 21, 1910,
adopted a resolution which was duly recorded.  "That an
assessment of ten per cent. (10%) be and the same is hereby
levied upon the membership of this association, based *pro
rata* upon the guaranty fund, for the purpose of providing
funds for the payment of death losses, said assessment to be
due and payable during the month of July, 1910, and to be
designated as call 109.  Resolved, that five per cent. (5%) on

1. MUTUAL INSUR-
ANCE: non-pay-
ment of assess-
ment: evidence.

the guaranty fund of this association be and the same is hereby ordered collected with call 109 from all members whose certificates are dated July 1, 1888, and subsequently thereto, and prior to May 1, 1910, as the semiannual expense dues, to be due and payable during the month of July, 1910." A notice was issued reciting:

This is to notify you that a levy of ten per cent. upon the amount of the guaranty fund has been made to provide benefit fund for death losses, no part of which can · be used for expenses.        -                    ·

Your portion for the benefit fund is................$11.70
This call embraces the expense dues for six months for
   the contingent fund .......................... 5.85
                                         _____
   Total .......................................$17.55
Overpaid call 108 ............................. .40
                                         _____

                                       $17.15

. . . . This sum is due July 5, 1910, and payable only to this association at its home office or to a depository bank. One month's grace is allowed so that payment may be made on or before August 1, 1910. If not made by that date, your membership and insurance will thereby cease without action by the association.

This notice is alleged to have been inclosed in an envelope returnable to defendant if not delivered by August 1, 1910, properly addressed to Mulherin, and duly stamped and placed in the United States mails for delivery. As no response was received, a second notice was mailed September 10th following, wherein the items of the assessment and when payable were recited, together with the fact that no response had been made to the previous notice, adding: "If you have paid please report to us at once the time and manner of payment and to whom in order that we may investigate. . . . In the event you conclude not to apply for reinstatement, please advise us of the reason for your lapse and read the copy of

your guaranty note upon your certificate by which you will see that the whole amount becomes due at once.'' This was sent as a registered letter, and a receipt purporting to have been signed by Mulherin returned to the company. Again on October 13th a letter stating that Mulherin's certificates had lapsed and that the assessment with the balance owing on the guaranty note must be remitted with certificate of health accompanying application for reinstatement. Though duly mailed in an envelope with return card thereon to the assured at his address, there was no response, nor was the letter returned. Under section 7 of the third article of the by-laws, it was the duty of the assured, if no notice of assessment had been received by July 10th, to so inform the association within three days thereafter, and by the next section his failure to so advise it ''shall be taken as conclusive evidence of the receipt by him of the original notice.'' It is to be assumed, then, that Mulherin received the notices. Indeed, this is not questioned, but it is insisted that defendant utterly failed to prove the nonpayment of the assessment. Payment thereof might have been made directly to the association or to an authorized depository bank, if within the time designated in the notice but not afterwards.

The chief clerk in defendant's auditing department testified: ''Mr. Mulherin did not pay the assessment call No. 109, to my knowledge. . . . (After referring to second notice.) I think there was no response to that notice. . . . The association never received payment on the assessment call 109 from Thomas Mulherin, a depository bank, or any one else.'' There was other testimony that no response was ever made to any of these notices. With knowledge that defendant was proceeding on the theory that the assessment was unpaid and the certificates forfeited, it is utterly improbable that he should have remained silent if he had paid the assessment directly, or through an authorized depository bank especially, and we are of opinion that the evidence quoted, when consid-

ered in connection with these facts, was sufficient to carry the issue as to payment to the jury.

II.   Appellee insists that the assessment and notice were not in compliance with section 1788 of the Code in that neither designated the portion of the assessment to be paid for death losses accrued and the portion for those antic-

2. SAME: notice of assessment: sufficiency.

ipated.   That section declares that "the articles and by-laws of each such association and its notices of assessment shall state the objects to which the money to be collected is to be devoted, and no part of the proceeds thereof shall be applied to any other purpose than as stated, and the excess, if any, beyond payment of the benefit, shall be set aside and applied only to like purposes." The design of this statute was not to compel such associations to specify the particular items on which the moneys collected would be expended but the objects or purpose in a general but inclusive way.   Section 1 of article 11 provides that the board of directors, to provide funds by assessment to meet all claims promptly "may from time to time determine and fix the *amount deemed necessary therefor,* the *place at which,* and *time at* which or during which it shall become due and payable, and the *manner of notifying the members thereof,* and may regulate the method of collecting the same; and the board may in like manner *also provide funds in advance,* for the *payment of any claims which may be anticipated during the three months next ensuing basing estimate therefor on the American Experience Table of Mortality.*"

The purpose of the assessment was to provide a fund out of which to pay benefits during the ensuing three months, and it was no less a benefit fund out of which to pay death losses because these were anticipated than had deaths already occurred and losses accrued.   The decisions cited by appellee construe articles not authorizing the anticipation of death losses and are not in point.   We are inclined to regard the designation of the objects of the assessment as sufficiently specific.

III.   Section 1 of article 4 of the by-laws provides that "no personal liability beyond the payment of the amount due on guaranty notes is incurred by becoming a member of the association," and it is argued that, as the assessment was against the assured personally, it created a personal liability for that the association might declare a forfeiture or waive the same and hold the assured for the amount of the assessment.   Such waiver does not render the assured liable but still leaves payment optional.

3. SAME: non-payment of dues: forfeiture: waiver: personal liability.

IV.   Section 3 of article 3 of the by-laws exacts that: "When an assessment has been made, notices thereof shall be prepared, containing a *statement of the percentage levied,* the object or objects for which the money to be collected is intended, and the time during which and the place at which the same must be paid; *and any note or other payment due from the member may be included in said notice.*"   It is said that this was not complied with in that the notice recited that the object of the levy was "to provide a benefit fund for death losses," whereas it was in anticipation of such losses. What has been said previously disposes of the point.   The fund was no less to meet "death losses" because these were subsequently to accrue, and, as the power to anticipate these in providing funds by assessment was expressly conferred on the board of directors by the articles of incorporation and such was the practice, the assured had no cause for complaint if the notice failed to specify for what particular losses the benefit fund should be distributed to those accrued or to accrue shortly.

V.   But it is argued that the guaranty deposit made by each member, upon entering the association, should have been resorted to and exhausted to meet the assessment before the certificates of insurance could be forfeited. The ruling of this court to the contrary appears in *Hoover v. Bankers' Life Ass'n,* 155 Iowa, 322.   Counsel for appellee challenge the correctness of

4. SAME: application of guaranty deposit.

that decision largely on the ground that some provisions of the association's articles and by-laws must have been overlooked.

We have examined all of these again and, without entering into another discussion, reach the conclusion that, though some of the language employed in two sections when standing alone seems to lend support to appellee's contention, the charter and by-laws, when considered as a whole, leaves no escape from the construction given these in that decision. A complete response to the argument will be found in *Bond v. Bankers' Life Association*, 90 Kan. 215 (133 Pac. 854), where the Supreme Court of Kansas, after setting out the portions of the articles and by-laws bearing thereon, says, speaking through Johnston, C. J.:

Interpreting the provisions of the certificate, charter, and by-laws as liberally in favor of membership rights as is permissible under any rule, we are unable to sustain the contention of appellants. Apart from the provisions in the guaranty note that it was given for insurance, nothing is found which indicates that a member can postpone payment of assessments with the assurance that the guaranty fund will be used to relieve him from the effect of his default. As will be observed from the quoted provisions of the contract, the association has four funds, the guaranty, benefit, contingent, and reserve, and each belongs to the organization and is subject to its control. No member has any separate ownership or control of any part of these funds. The guaranty fund is, in a sense, a trust fund to be devoted to specified uses and cannot be diverted to any other use. It is made up of the sums which each member contributes as a pledge that he will pay his assessments when due, and the alternative provisions are that, if he does not pay these, the deposit shall be forfeited and become a part of the reserve fund. There is no provision that any part of it can be paid to or used by the member in any event. It is provided that, if a member has paid all his assessments and dies in good standing, the amount of the original deposit shall be paid to his beneficiary. The deposits which are forfeited and pass into the reserve fund are applied to the payment of death losses in excess of 1 per

cent. per annum of the membership, and, in case there is not sufficient money in the benefit fund at any time to meet current death losses, resort may be had to the reserve fund containing the forfeited deposits to pay such losses, and the amount so temporarily withdrawn is to be restored to the reserve fund when the benefit fund has been replenished from assessments. On account of this provision, members are assured that losses will be paid even if a part of the members shall delay payment of their assessments for a time or should absolutely forfeit their membership. The provision that the guaranty deposit shall go into the reserve fund for the payment of certain losses is wholly inconsistent with the theory that it can be used to pay assessments, and the provision that the amount of the deposit shall be paid to the beneficiary of one who was a member at his death is inconsistent with the theory that they may be devoted to the payment of the assessments of members, and so counsel pertinently ask: How can the guaranty deposit be used to pay the member's assessment when the certificate requires it to be paid in full to the beneficiary in case the member dies in good standing? It is likewise true as to the interest that may have been received on deposit obligations. It, too, goes into the reserve fund which is to be applied to specified uses, and it is clear that, if it must be used for the specified purposes, it is not available to pay assessments against members. The express provision that the guaranty deposit shall be forfeited for nonpayment of assessments is irreconcilable with the theory that it can be used to pay assessments. The purpose of the guaranty deposit, including the assurance thereby given to assure members that losses will be paid, although some of the members should become delinquent in the payment of assessment, would be frustrated if the guaranty fund should be depleted by paying the assessment of delinquent members. The charter provisions, as well as those in the by-laws, are not open to construction that would permit this to be done. It is ingeniously argued by counsel for appellants that, as the guaranty note given by the insured designates the deposit as insurance, it necessarily led the insured to believe and warrants the court in holding that the deposit which he contributed was intended to be used for the insurance of himself, and that in case of necessity the money could be applied for his individual protection and to prevent a forfeiture of his certificate. If

the theory could be maintained that the deposit belonged to him and was for his individual protection, there would be no reason in appellants' contention that there is a conflict between this and the other provisions of the contract, and at the oral argument the writer was inclined to the view that a conflict did exist between the provisions of the note and those in the other provisions of the contract. A closer examination of all the provisions, however, satisfactorily shows that there is no real conflict in them. The deposit given is for insurance, it is true, but it is for the insurance of members in good standing and not of those in default who have forfeited membership in the association. It is association instead of individual insurance and is not subject to individual control or use.

The appellate court of Indiana reached the same result in *Stubbs v. Bankers' Life Ass'n,* 101 N. E. 638. We need only add that the opinion in *Hoover v. Bankers' Life Ass'n, supra,* decided since the trial of the cause at bar, is adhered to, and, for the error in directing a verdict for plaintiff, judgment is *Reversed.*

EVANS, PRESTON, and WEAVER, JJ., concur.