(No. 15391.—Judgment affirmed.)
HELEN M. STRINGHAM, Admx., Appellant, vs. THE BANK-
ERS LIFE ASSOCIATION, Appellee.

*Opinion filed June 20, 1923—Rehearing denied October 5, 1923.*

1. BENEFIT SOCIETIES—*when insurance is forfeited for non-pay-ment of assessment.* Although the charter of an assessment com-pany requires the payment of a certain sum into a guarantee fund upon the taking out of a membership and refers to the guarantee fund as security for the payment of assessments, yet such fund cannot be applied to the payment of a delinquent assessment, and the rights of a beneficiary will be forfeited for non-payment of an assessment where both the charter and the by-laws provide that the guarantee fund and the insurance shall both be forfeited for such non-payment.

2. SAME—*provision for forfeiture for non-payment of assess-ment is self-executing.* A contract of insurance with an insurance company which provides for forfeiture upon the failure of a mem-ber to pay an assessment is self-executing, and upon default in pay-ment the insured ceases to be a member and his rights are at an end.

APPEAL from the Appellate Court for the First Dis-trict;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. ANTON T. ZEMAN, Judge, presiding.

ELIZABETH PERRY, for appellant.

W. S. AYRES, and O. S. BAYLIES, for appellee.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

Appellant sued appellee in the circuit court of Cook county on a certificate of insurance issued by appellee to Ernest Morehouse, deceased. Appellee is what is known as an assessment company. The certificate was issued to Morehouse in September, 1908, and provided for payment to his beneficiary of $2000, with the guarantee fund of $39 paid by him to appellee, if he died during membership.

The certificate further provided that if Morehouse failed to make any payment due from him at maturity, the guarantee deposit and all other payments made be forfeited and his membership thereupon cease. An assessment of $5.46 was made, which was payable October 1, 1917, but under appellee's by-laws Morehouse had the whole of the month to pay it. October 31 he was stricken with cerebral hemorrhage, became unconscious and so remained until his death, November 7. He had made all previous payments. Appellee denied liability and pleaded forfeiture for failure to pay the assessment. There was no dispute as to the facts, most of which were stipulated. At the close of appellant's evidence the court instructed the jury to return a verdict for appellee and rendered judgment on the verdict so returned. The judgment was affirmed by the Appellate Court and a certificate of importance granted, upon which the case is appealed to this court.

One of the conditions of becoming a member of the appellee association and receiving a benefit certificate for $2000, payable to his beneficiary at the member's death in good standing, was the payment by the member of a guarantee fund. The decision of the case depends solely upon the contention of appellant that the guarantee fund or deposit paid by Morehouse was a pledge in the nature of collateral to secure the payment of assessments and should have been applied to the payment of the delinquent assessment. The benefit certificate made the articles of incorporation and by-laws of appellee a part of the contract. The association had four funds, namely, guarantee fund, benefit fund, reserve fund and contingent fund, which it was required to keep separate and distinct on its books. Section 2 of article 9 of the charter provided appellee's business should be conducted on the mutual assessment plan, and that payment of assessments should be secured by a guarantee fund contributed by each member *pro rata,* according to age at entry. It further provided that the guar-

antee fund and the insurance provided in the certificate of membership and by-laws should be forfeited upon the failure of a member to pay assessments within the time prescribed. Section 2 of article 10 of the charter provided the guarantee fund should consist of the deposits pledged by the member for the prompt payment of assessments. The deposit required was one dollar for each year of the age of the member at the date of application, and might be paid in cash or by a note payable on such terms as the board of directors prescribed. The benefit fund consisted of all moneys collected by assessment for losses occasioned by death of members. By article 4 of the charter it was provided the reserve fund should consist in part of all the guarantee deposits forfeited to the association by lapsed members and should be set apart as an emergency fund to pay death losses in excess of one per cent per annum of the membership and for temporary advances to pay death losses when the benefit fund was exhausted. By section 6 each fund was expressly required to be used for the purpose indicated in the previous section, and no appropriation was permitted from one fund to pay a claim upon another except as provided in section 4. Section 1 of article 11 of the charter authorized the board of directors to determine the assessments and the amount necessary to pay claims against appellee. Section 2 of article 1 of the by-laws required each applicant for membership to deposit in cash or note a sum equal to one dollar for each year of his age for each certificate of $2000, for the guarantee fund. Section 4 of article 4 provided that in the event of forfeiture of the rights of a member the guarantee deposit pledge should become forfeited absolutely and become the property of the association. Section 5 provided that when assessments were not paid promptly the allowance to the beneficiary of a deceased member should not thereby be impaired or lessened, but the arrears should be taken from the reserve fund and be restored finally by collection of arrearages or forfeiture

of the guarantee deposit, "as provided in section 2 of this article." Section 1 of article 6 provided that upon the death of any member while in good standing the guarantee deposit or pledge given by him should be returned to his beneficiary.

While the charter refers to the guarantee fund as security for the payment of assessments, both the charter and by-laws provide that the guarantee fund and the insurance shall both be forfeited for non-payment of an assessment within the time prescribed. Some phrases in the articles of incorporation, if considered without reference to the remainder of the article in which they appear or other articles of the charter, tend to support the contention of the appellant, but when all the provisions of the charter are considered it plainly appears that all rights of the member or his beneficiary become forfeited and cease absolutely upon failure of the member to pay an assessment within the time prescribed. A contract of insurance with an insurance company which provides for forfeiture upon the failure of a member to pay an assessment is self-executing, and upon default in payment the insured ceases to be a member and his rights are at an end. *Lehman* v. *Clark,* 174 Ill. 279.

The precise question here raised has not been heretofore presented to or decided by this court. The same question has been decided by the courts of Missouri, Kansas, Iowa and Indiana in cases where appellee here was the defendant and the same contract was considered. In *Hoover* v. *Bankers Life Ass'n,* 155 Iowa, 322, it was claimed a delinquent assessment should have been paid from the guarantee fund, and the court held that the claim was untenable; that the guarantee deposit could not at the same time be used for the payment of delinquent assessments and be forfeited to the association for non-payment of assessments. The court held that under the contract if a member died in good standing the whole of the guarantee fund was to be paid to his beneficiary, and the member had no right to

have the guarantee deposit used to pay an assessment or in
any other way for his benefit.  The court said the rule that
contracts of insurance should be construed most strongly
against the insurer was relied on, but with that rule clearly
in mind it must be held the contention that the assessment
was payable out of the guarantee deposit could not be sus-
tained.  The same court in *Mulherin* v. *Bankers Life Ass'n,*
163 Iowa, 740, where the same question was presented,
cited and adhered to its former decision.  The same ques-
tion was decided by the Supreme Court of Kansas in *Bond*
v. *Bankers Life Ass'n,* 90 Kan. 215.  In that case the mem-
ber had defaulted in the payment of an assessment of $3.36
before his death.  The court said, if there was any reason-
able theory upon which a forfeiture could be avoided it
would adopt that theory, but said in interpreting the char-
ter and by-laws of the association liberally, the contention
that the guarantee deposit could be drawn on to pay the
assessment could not be sustained.  We quote a few lines
from the opinion:  "The provision that the guaranty de-
posit shall go into the reserve fund for the payment of
certain losses is wholly inconsistent with the theory that it
can be used to pay assessments, and the provision that the
amount of the deposit shall be paid to the beneficiary of
one who was a member at his death is inconsistent with the
theory that they may be devoted to the payment of the as-
sessments of members.  *  *  *  The express provision
that the guaranty deposit shall be forfeited for non-payment
of assessment is irreconcilable with the theory that it can
be used to pay assessments.  The purpose of the guaranty
deposit, including the assurance thereby given to paying
members that losses will be paid although some of the
members should become delinquent in the payment of as-
sessments, would be frustrated if the guaranty fund should
be depleted by paying the assessments of delinquent mem-
bers.  The charter provisions, as well as those in the by-
laws, are not open to construction that would permit this

to be done." The Appellate Court of Indiana considered the question in *Stubbs* v. *Bankers Life Ass'n,* 55 Ind. App. 579, and said: "If the articles and by-laws should be construed and held to permit the payment of mortuary assessments from the guaranty fund, which is wholly made up of the guaranty deposits of members in good standing, that fund might be exhausted, and without any provisions for the reimbursement of the same by assessments levied against members there could be no return of the guaranty to beneficiaries. Without the guaranty fund, held as a pledge and as an inducement to members to continue in good standing and transferred to the reserve fund on forfeiture of membership for non-payment of assessments, the strength of the association would be speedily dissipated. As we see it, this guaranty fund is the distinguishing feature of the appellee association,—the feature which gives it permanence and stability." The same court adhered to that decision on the same question in *Brown* v. *Bankers Life Ass'n,* 55 Ind. App. 701. In the case of *Mee* v. *Bankers Life Ass'n,* 69 Minn. 210, the defendant was not appellee here, but the charter, by-laws and contract of the defendant there were very similar to those here involved and the same ruling was made. The Missouri Court of Appeals in *McCoy* v. *Bankers Life Ass'n,* 134 Mo. App. 35, *Smoot* v. *Bankers Life Ass'n,* 138 id. 438, and *Hay* v. *Bankers Life Ass'n,* 207 id. 231, decided the same questions in the same way the courts of Kansas, Iowa and Indiana decided them.

Appellant insists that while the decisions of courts of other States are entitled to the highest respect and consideration they are not binding on the courts of this State. That is true, and if we were unable to concur in the views expressed by the courts of other States which have passed upon the same question we would not adopt and follow them, but we agree with the decisions of the courts referred to and would give the contract the same construction those courts give it if we had not had the benefit of their discus-

sion and decision.   The default in the payment of an as-
sessment of $5.46 is a small matter to forfeit a valuable
contract, and we, like the Supreme Court of Kansas, would
not enforce the forfeiture if there were any reasonable the-
ory upon which it could be avoided, but as we construe the
contract we cannot do otherwise than affirm the judgment
of the Appellate Court.                    *Judgment affirmed.*

---

(No. 15299.—Judgment reversed.)
THE JERSEY ICE CREAM COMPANY, Plaintiff in Error, *vs.*
THE INDUSTRIAL COMMISSION *et al.*—(HANNAH J.
CONNELLY, Defendant in Error.)

*Opinion filed June 20, 1923—Rehearing denied October 4, 1923.*