## GALBRAITH v. BANKERS LIFE CO.

No. 23491.   Oct. 30, 1934.

W. L. Houts, for plaintiff in error.

McKeever, Elam, Stewart & McKeever, and J. P. Lorentzen, for defendant in error.

PER CURIAM. The suit was brought by Essie May Galbraith against the Bankers Life Company, Des Moines, Iowa, to recover on certificate of membership No. 57636 issued on the life of William W. Sebring. She was the niece of the insured and beneficiary named in the certificate.

Judgment was entered for the defendant, and plaintiff appealed to this court.

The plaintiff complains that error was committed in permitting the defendant to file an answer setting up that this was an Iowa contract and pleading the Iowa law after the case had been submitted to the court for determination. She further complains of the character of the evidence admitted to establish the Iowa law. Under our determination the question as to whether or not this was an Iowa contract or an Oklahoma contract is of no importance, hence, the pleading and proof of Iowa law, even if improper, which we do not suggest, the error so committed is harmless.

So far as the determination of this cause is concerned, the issues of law and fact were presented by stipulation to the court without the intervention of a jury.

The stipulation sets forth the certificate of membership issued December 2, 1896, the articles of incorporation and the by-laws in force at the time the certificate was issued, and the articles of incorporation and the by-laws in force on July 4, 1928, on which date William W. Sebring died. The stipulation sets forth that William W. Sebring became a member of the Bankers Life Association and certificate No. 57636 was issued to him on December 6, 1896; that for the purpose of this action the Bankers Life Company and the Bankers Life Association of Des Moines, Iowa, shall be considered as one and the same corporation; that the Bankers Life Company is a life insurance company existing under and by virtue of the laws of the state of Iowa, licensed to do business and doing business in the state of Oklahoma; that the defendant is still a mutual life assessment association, charging no level premiums, but certain dues and assessments payable quarterly in each year, in January, April, July, and October, such dues and assessments being levied by defendant's board of directors, pro rata on the guarantee deposit of each member, in accordance with articles of incorporation and by-laws of the association, and particularly the provisions of article 3 of the by-laws of said defendant; that on July 4, 1928, William W. Sebring died of natural causes; that proof of death was made to the company, but same was refused on the ground that said certificate had lapsed and become null and void by reason of the nonpayment of dues and assessments by the insured; that all dues and assessments due the said defendant from William W. Sebring prior to January 1, 1928, were paid; that an assessment of $17.10, which was properly levied and was payable on or before January 31, 1928, was not paid by William W. Sebring; that at the time the certificate of membership was taken out on December 2, 1896, under the provisions of section 2, article 10 of the articles of incorporation then in force, he deposited $38 in the guarantee fund, which consisted of $1 for each year of the member's age at nearest birthday, which deposit was required as a condition precedent to membership; that on the nonpayment of the assessment

for $17.10, the defendant, in accordance with its interpretation of its rights and duties, canceled the membership of William W. Sebring, and forfeited the said guarantee deposit of $38.

The contention of the parties was set forth in article 10 of the stipulation, which reads:

"(a) Plaintiff contends that the said sum of $38 so deposited by said member for the 'guarantee fund' with interest thereon from December 2, 1896, the date of deposit, must be applied to the payment of any assessment due from said member, before the said certificate lapses and becomes null and void.

"(b) Defendant contends that said member did not pay the assessment due and payable on or before January 31, 1928, and that thereupon the said certificate No. 57636 lapsed and became null and void, and the said $38 immediately became forfeited to the defendant, if any interest the insured had therein after said certificate lapsed, and that defendant owes the plaintiff nothing."

The pertinent portions of the membership certificate, the articles of incorporation, and by-laws read:

"This is to certify, that in pursuance of the articles of incorporation and by-laws of this association and in consideration of the statements contained in his application No. 48619 all of which are hereby made a part of this contract and the sum of fifty-seven dollars, Mr. William W. Sebring of Carroll, state of Iowa, by occupation a carpenter N. W. R. R., aged thirty-eight years, has been admitted to membership in this association, and that in the event of his death during membership, his beneficiary shall receive the sum of—two thousand dollars—for this certificate of membership and the guarantee fund deposited with the association by the said member amounting to—thirty-eight dollars.

"Upon the failure of the above-named member to make any payment due from him to the association at its maturity in January, April, July or October of each year, his guarantee deposit shall be forfeited and his membership shall thereupon cease."

Section 2 of article 9 of the articles of incorporation provides:

"The business of this association shall be conducted upon the mutual assessment plan, in which the payment of all assessments shall be secured by a guarantee fund, contributed by each member pro rata according to age at entry; this guarantee fund, together with the insurance provided in the certificate of membership and by-laws of the association, to be forfeited upon failure of a member to pay his assessments within the time prescribed by the by-laws of the

association, provided, however, that relief from such forfeiture and provision for reinstatement of lapsed members, may be made by the board of directors."

Article 10 of the articles of incorporation sets forth the several funds of the corporation and their uses:

"Article 10, section 1. The funds of the association shall be kept separate and distinct upon the books thereof, and shall be designated as follows, to wit:

"The guarantee fund, the benefit fund, the reserve fund and the contingent fund, and such other funds as the board of directors may hereafter establish.

"Sec. 2. The guarantee fund shall consist of the deposits pledged by each member of the association for the prompt payment of assessments and the said deposit required of each member shall consist of the sum of one dollar for each year of the age of member at date of application, counted at nearest birthday, and may consist of cash, or of note at 4 per cent. interest, payable on such terms as the board of directors may prescribe, and the said board shall have power to declare a certificate of membership void and of no effect upon defalcation of payment of any note executed for said deposit.

"Sec. 3. The benefit fund shall consist of all moneys collected for the payment of losses occasioned by the death of members of the association and shall be collected by pro rata assessments levied by the board of directors upon the guarantee fund of the association.

"Sec. 4. The reserve fund shall consist of all guarantee deposits forfeited to the association by lapsed members, and the interest accruing from all funds of the association of whatever nature; all gains, discounts and margins realized on sale of bonds and mortgages and on real estate taken under foreclosure or otherwise, and all unused surplus arising from the contingent fund and all other sources. This reserve fund shall be set apart as an emergency fund for the purpose of providing for death losses in excess of one per cent. per annum of the membership of the association, and for the further purpose of temporary advances for the payment of death losses when the benefit fund is exhausted.

"Sec. 5. The contingent fund shall consist of all moneys, collected for the purpose of defraying the expenses connected with the transaction of the business of the association, and shall be composed of the membership fee, a sum equal to 50 per cent. of the guarantee deposit of each member, to be paid on admission, and an annual tax of six (changed July 1, 1888, to ten) per cent. on the guarantee deposit, for expenses, to be collected in such installments and at such times as the board shall direct, provided, that the board may increase these

fees and annual expense items at their discretion, but no such increase shall affect members admitted prior thereto.

"Sec. 6. Each fund shall be used expressly for the purpose indicated in the foregoing sections of this article, respectively, and no appropriation shall be made of one fund for the purpose of paying a claim upon another, except as provided in section 4 of this article."

Section 2 of article 3 of the by-laws provides the method of making assessments, and when they should be due and payable:

"Each assessment shall be levied pro rata on the guarantee deposit of each member, and shall be due and payable either in January, April, July or October, unless otherwise specified in the notice of assessment, and in addition to claims unprovided for may provide funds in advance for payment of claims to be anticipated in the ensuing three months or any fraction thereof. But no assessment shall be made upon certificates issued during the two months next preceding the month in which the assessment is made payable."

Sections 2 and 4 of article 4 of the by-laws provide the effect of the nonpayment of an assessment by a member:

"Sec. 2. Upon the failure of any member to pay any assessment or note within the time and at the place named therein, his membership shall be thereby forfeited and his right to any share or interest in the funds or property of the association shall cease absolutely at the expiration of the time stipulated in which such payments are required to be made, and all payments made shall be forfeited to the association."

"Sec. 4. In the event of the forfeiture of the rights and privileges of a member of this association, the guarantee deposit pledged by such member shall become forfeited absolutely and become the property of the association."

The question thus presented is whether or not the $38 which the insured was required to and did deposit in the guarantee fund of the association as a condition precedent to membership therein is applicable to the payment of the assessment which was levied against him as of January 1, 1928, and which he did not pay.

Like question under similar membership contract does not appear to have been presented to this court before. However, this or similar contracts have been before numerous courts of other jurisdictions and the decisions seem to have been unanimous, except for one Missouri decision which we will hereafter mention, in holding that where the articles of incorporation of an association doing insurance business on the mutual benefit plan, together with its by-laws and

membership certificate, provide that, as a condition precedent to membership, said applicant should contribute to or deposit a certain amount in a guarantee fund, which guarantee fund shall go to the reserve fund on nonpayment of assessments, as was provided in the instant contract, neither the guarantee fund so contributed nor any portion thereof could be used to pay the individual assessment made against a member. Bond v. Bankers Life Association of Des Moines, Iowa, 90 Kan. 215, 133 P. 854; Hay v. Bankers Life Co. (Mo. App.) 231 S. W. 1035; Hoover v. Bankers Life Association (Iowa) 136 N. W. 117; Mulherin v. Bankers Life Association (Iowa) 144 N. W. 1000; Stubbs v. Bankers Life Association (Ind. App.) 101 N. E. 638; Mee v. Bankers Life Association (Minn.) 72 N. W. 74; Stringham v. Bankers Life Association (Ill. )140 N. E. 860, 29 A. L. R. 512; Wall v. Bankers Life Association (Iowa) 223 N. W. 257. The contract in each of these cases seems to be substantially identical with the one before us here.

The syllabus in the Stringham Case, reads:

"Where the charter and by-laws of a mutual assessment life insurance company provide for forfeiture of the guaranty fund deposited by the member upon his failure promptly to pay an assessment, and its transfer to the reserve fund, the guaranty fund of a member cannot be applied in satisfaction of an unpaid assessment so as to avoid a forfeiture of the policy, although the charter of the association provides that payment of assessments shall be secured by the guaranty fund."

In the Bond Case, the court says:

"The articles of incorporation of an association doing business on the mutual assessment plan, together with its by-laws and other writings which entered into the contract of insurance between the member and association, examined, and it is held that neither the guaranty deposit made by a member when he is admitted to the association nor any part of the guaranty fund of the association can be applied in payment of delinquent assessments."

The Missouri court, in the Hay Case, says:

"Where an assessment company required members to make a deposit in the guaranty fund, held, in view of the provisions that in case of lapse, the sum paid should go into the reserve fund, and other by-laws showing that the insurer conducted its business solely on the assessment plan, a member was not entitled to have an assessment paid out of the guaranty fund."

It has been suggested that the Court of Appeals of Missouri in Purdy v. Bankers

Life Association (Mo. App.) 74 S. W. 486, is authority for the use of this guarantee fund to pay the January assessment made against William W. Sebring. The case supports that interpretation. However, the Missouri court, in Smoot v. Bankers Life Association, supra, and McCoy v. Bankers Life Association, supra, depart from that interpretation of the contract, and we think the later interpretation of this type of contract given by the Missouri court is sustained by better reasoning.

The articles of incorporation and by-laws required the deposit in the guaranty fund as a condition precedent to membership. They provide that on the lapsing of a membership by nonpayment of assessments when due the deposit should go to the reserve fund. The certificate of membership clearly states that the member shall cease to have an interest in the guarantee fund on his failure to pay his assessments. The deposit made in the guarantee fund was to be used as additional security to the members in good standing that the beneficiaries of those members, who might die while in good standing, might be assured of the benefits to which such members were entitled under the terms of their contracts, even though the assessments on the individual members might not be paid. This deposit became a part of the guarantee fund of the association, and this fund or no part thereof belonged to any individual member of the association. It was in the nature of a trust fund, usable only for the purposes set forth in the membership certificate, the articles of incorporation, and the by-laws of the association. The provisions of the membership certificate, the articles of incorporation and the by-laws are in full harmony with each other in the use of the guarantee deposit fund.

In case a member failed to pay his assessment when due, he ceased to be a member of the association, and ceased to have any interest in any funds of the association.

In case a member died while in good standing, his beneficiary was entitled to the benefits provided in the certificate, which in this instance would have been $2,000 plus $38.

It is well established that a member lapses his insurance by failing to pay his assessments when due. Shawnee Mutual Fire Insurance Co. v. Cannedy, 36 Okla. 733, 129 P. 865, 44 L. R. A. (N. S.) 376; Modern Brotherhood of America v. Beshara, 42 Okla. 684, 142 P. 1014; Sovereign Camp W. O. W. v. Tam, 90 Okla. 196, 216 P. 660.

Sebring did not pay the January assessment levied against him, so his membership lapsed, and his interest in the funds of the defendant company lapsed January 31, 1928. He was no longer a policy holder in the company, and had no valid claim against it.

It has been urged that the forfeiture of the $38 deposited in the guarantee fund cannot be sustained because of section 9488, Okla. Stats. 1931, which provides that penalties imposed by contract for any nonperformance thereof are void. Plaintiff has not submitted to us any authority which would substantiate that this contract comes within the restriction provided by this statute. Our analysis does not justify holding that this section prohibits the making of such a contract as appears before us in this cause. As a condition precedent to membership in the association, the applicant was required to pay a certain amount, $57. Of this amount paid, a certain proportion thereof, $38, was contributed to the guarantee fund and became the property of the defendant company. This guarantee fund was usable only as provided in the contract. An analysis of the membership certificate, the articles of incorporation and by-laws, makes clear the uses to which this guarantee fund may be put. The payment of individual assessments is not one of them. The money so deposited or contributed no longer belongs to the member, but to the association. As was said in Bond v. Bankers' Life Association of Des Moines, Iowa, supra:

"No member has any separate ownership or control of any part of these funds. The guaranty fund is in a sense a trust fund to be devoted to specified uses and cannot be diverted to any other use."

Death benefits are payable by assessments levied on the individual members. Assurance that death benefits could and would be met was provided in the establishment of the guarantee fund and the reserve fund. If members could require that the individual assessments be met from the guarantee fund, this security, or additional assurance of payment, would cease to exist, and the inducement to persons to become members of the association, and this inducement to members to continue the payments would no longer exist. We could not assume to guess the damage which would result to the paying members of the association in case the guarantee fund were so dissipated.

Section 9488, Okla. Stats. 1931, does not prohibit a mutual assessment life insurance company from requiring, as a condition precedent to membership, that a contribution of a sum certain be made to the guaranty

fund of the company, and that said member shall have no interest in the guaranty fund if he lapses his membership and insurance by the nonpayment of assessments when due.

We are of the opinion, and so hold, that this contract does not violate section 9488 of the Oklahoma Statutes 1931, in that the January assessment made against William W. Sebring was not paid, and was not payable out of the guarantee fund of the defendant company; that William W. Sebring ceased to be a member for nonpayment of assessments on January 31, 1928, and that he had no insurance in the defendant company on July 4, 1928, when he died. The cause is affirmed.

The Supreme Court acknowledges the aid of Attorneys W. L. Eagleton, Roscoe E. Harper, and Saul Yager in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Counsel, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Eagleton and approved by Mr. Harper and Mr. Yager, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.